THE CHICAGO UNION TRACTION COMPANY

*v.*

ADOLPH SAWUSCH.

*Opinion filed October 24, 1905—Rehearing denied Dec. 6, 1905.*

1. STREET RAILWAYS—*it is the company's duty to deliver reasonably safe cars to a motorman.* A servant of a street car company engaged in delivering a car to a motorman to replace one going in for repair is discharging a personal obligation of the company, and the company is liable for such servant's negligence in delivering a car without a motor handle or with a handle which does not fit the car and with which the car cannot be reversed.

2. MASTER AND SERVANT—*when negligence of a fellow-servant does not defeat recovery.* Although an injury may be chargeable

in part to the negligence of a fellow-servant, yet if the negligence of a vice-principal of the master contributed to the injury and the injury would not have occurred but for such negligence the master is liable.

3. INSTRUCTIONS—*when refusal of instruction will not reverse.* Refusal of an instruction for the defendant in a personal injury suit will not work reversal where other instructions given at its request secure to it all the benefit which could have been derived from the refused instruction.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

JOHN A. ROSE, and ALBERT M. CROSS, (W. W. GURLEY, of counsel,) for appellant.

PINCKNEY, TATGE & ABBOTT, and THOMAS A. LEACH, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

In an action on the case by the appellee against the appellant company, judgment was entered in the superior court of Cook county in favor of the appellee in the sum of $12,000, which, on appeal, was affirmed by the Appellate Court for the First District in the sum of $10,000, a *remittitur* of $2000 having been entered, and a further appeal has brought the record into this court.

Two grounds for reversal are urged: First, that the trial court erred in refusing to direct a peremptory verdict, as requested by the appellant company; and second, that the court erred in refusing to give instruction No. 1 asked by the appellant company.

The contention of the appellant company as to the facts proven by the testimony is stated by its counsel as follows: "The evidence in this case is practically harmonious and shows the following undisputed facts: The accident oc-

curred July 3, 1901, about eleven o'clock at night, on Van-Buren street between State street and Plymouth place. The defendant has a double street car track in that part of Van-Buren street, together with a switch track connecting the two main tracks. There are two lines of cars running on that street,—the VanBuren street cars, which run east and west on VanBuren street from State street to Kedzie avenue, and the Twelfth street cars, which run east and west on VanBuren street from State street to Fifth avenue and then turn off into another street. Both these lines are operated by means of an overhead trolley. At the time of the accident the plaintiff was a conductor running on the VanBuren street line and had been running on that line for about five years. The cars are trolley cars, capable of running in either direction and with a fender at each end, the fender at the rear of the car being usually fastened up and the one in the front of the car extended while the car is running. Of course, when the car changes from one direction to the other it is necessary to put down one fender and raise the other. At the time of the accident the plaintiff's car, which was east-bound, had nearly reached the terminus of its run and was about to switch over into the other track on its return trip. It was standing still at the time, on the east end of the southerly track, the motorman being still at the east end of the car. The plaintiff reversed the seats in the car preparatory to the return trip, and then got off and went to the rear of the car in order to let down the fender at that end, which had been fastened up while the car was going east. This, he says, was his duty. When he reached that point he found that a Twelfth street car, which had also just come in from the west, was so close to his car that he could not lower the fender. He therefore asked the motorman of the Twelfth street car, with whom he was acquainted, having met him at that point nearly every evening, to move his car back. The motorman promised to do this, but in attempting to turn the handle so as to reverse the power he unintention-

ally made the car go forward instead of backward, with the result that the plaintiff's leg was caught between the two cars. The cause of the unexpected motion of the Twelfth street car was this: On the defendant's lines there are in use trolley cars having two different sizes of motors, and these different motors have different kinds of handles. These handles are removable, and whenever these cars are in the barns the handles are taken off and put in a place by themselves, ready to be used again when occasion requires. The motor on the Twelfth street car in question was a small motor, and the handle which the motorman was using was one adapted to the large motor. With such a handle it was possible apparently to make the car go forward and also to stop it, but if the attempt was made to reverse the car the handle was liable to slip, so as to cause the car to go forward instead of backward, and that is what happened on this occasion. The cause of the motorman's having the wrong handle on this occasion is thus explained: He had been running another car that day, but something went wrong with his car and his conductor telephoned to the car barns for another car. The other car was sent out to him in charge of a man employed in the barns, and when the two cars met at a point about a mile from the barns, the barn man took the disabled car on to the barns and the motorman proceeded on his way back with the new car. The car which he had been operating had a large motor while the car in which he now found himself had a small motor, and it is clear that in transferring from the one car to the other he carried his motor handle with him instead of leaving it in the car and taking the motor handle which had been used in the other car. This matter is sworn to directly by one witness, the conductor on this car in question, who said they 'changed the handle,' and it clearly appears by necessary inference from the evidence in the record. Thus Anderson, the barn man, swore that when he took the car in question out of the barns that night he had a motor handle that fitted the motor in that car.

He turned that car over to this motorman, and yet it clearly appears that at the time of the accident the motorman on the Twelfth street car had a handle which did not fit the motor on his car. The only possible explanation of this phenomenon is, that in the hurry of changing cars the motorman kept and transferred the motor handle which he had been before using, instead of leaving the motor handle on the car which it fitted. Both Anderson (the barn man) and Hunt (the motorman) say that they do not remember whether they changed handles at the time when they changed cars or not. The motorman did not discover that he had the wrong handle until the accident happened. The motor itself, the handles, car and other apparatus were all right, in good repair."

The contention that Hunt, the motorman, and the appellee were fellow-servants may be conceded. Anderson, the barn man, was clearly not a fellow-servant of the appellee. He had no duty to perform which had any connection with the duties of the appellee. The car which the motorman, Hunt, had been operating proved to be out of repair, and in order to enable Hunt to perform the work of the master the latter undertook to send him another car. Anderson, the barn man, was chosen by the master to select the car to be sent to Hunt and to take it out on the line of the road and there deliver it to Hunt. Anderson was, therefore, while engaged for the master in supplying to Hunt a car, performing a duty which devolved on the master to perform. It was the duty of the appellant company to furnish the cars to be operated by its servants. The law charged upon it the positive obligation to furnish reasonably safe cars and with no necessary part omitted therefrom, and holds it responsible for any failure to discharge that obligation and makes it liable for the failure of any servant it may employ to discharge that obligation. Any servant so employed is engaged in the performance of a duty or obligation of the appellant company and is acting as the representative and agent of the

appellant company, and for any want of proper caution on the part of any such agent or representative the appellant company is liable as for its own personal negligence. The neglect to properly perform that duty by such a representative or agent of the master is not a peril which other servants of the master assume. *Chicago and Alton Railroad Co.* v. *Maroney,* 170 Ill. 520.

We think it clearly deducible from the proof, either that Anderson, the barn man and the representative of the appellant company, delivered to Hunt the car which he (Anderson) brought from the barn with the improper handle thereon which was on that car when appellee was injured, or that Anderson delivered that car to Hunt without any handle on it. Anderson returned the defective car to the barn, and Hunt ran the car which came to him from the barn on his trip on appellant's tracks on the street, and both of the cars must have had motor handles after the change was made. If the handle remained on each car when the cars were changed, then Anderson, the representative of the appellant company, delivered to Hunt a car supplied with an improper handle, and this negligence was that of the appellant company and was the cause of the injury to the appellee. If, when the cars were changed, each motorman carried with him the handle from the car he was operating, then Anderson delivered to Hunt a car without any handle, which was a negligent act on the part of the appellant company and the proximate cause of the injury to appellee. We think it very clear that each motorman, when the cars were changed, carried away with him the handle he was using, and hence that each man got a car without a handle. If Hunt carried the handle which was on the defective car to the car which Anderson delivered to him and Anderson had not taken the handle therefrom, Hunt would have had two handles and the car which he delivered to Anderson would have been without any handle, and Anderson could not have run it back to the barn, as he did. Anderson, however, ran that

car which he got from Hunt, back to the car barn, and it follows either that Hunt did not carry the handle from that car and Anderson used the handle he found upon it, or that Anderson carried the handle from the car he had brought from the barn and used that handle, and consequently delivered the other car to Hunt unprovided with any handle. These conclusions do not result from mere conjecture or speculation as to what may have occurred, but are logically and reasonably to be deduced from the existence of facts that are established by the proofs.

It may be that it is fairly to be deduced also from the evidence that Hunt, the motorman, if he had exercised due care, would have discovered that the car which was delivered to him by Anderson, the barn man, was operated by a different and smaller motor requiring a different and smaller handle than the car he had been operating, and the injury received by the appellee may have been, in part, chargeable to this lack of due care on the part of Hunt, a fellow-servant. But if the negligence of Anderson, who was the representative of the appellant company and whose negligence was its negligence, contributed to the injury, and the injury would not have occurred but for the lack of care of Anderson, the appellant company would be liable. *Chicago and Northwestern Railway Co.* v. *Gillison,* 173 Ill. 264; *Armour* v. *Golkowska,* 202 id. 144.

The trial court did not, therefore, err in refusing to direct a verdict as a matter of law.

By instruction No. 1 asked by the appellant company and refused, the court was requested to direct the jury that the motorman, Hunt, and the appellee, were fellow-servants, and that the appellee could not recover under the first count of the declaration even if the jury should believe that Hunt was guilty of negligence in the manner in which he operated the car at the time and place when and where the appellee was injured. The first count in the declaration charged that "defendant, by its said servants, so carelessly, negligently

and improperly drove and managed the said motor or trolley car, that by and through such carelessness, negligence and improper driving of said motor or trolley car said car then and there ran and struck with great force and violence upon and against the plaintiff." No instructions were asked in behalf of the appellee. Twenty-four instructions were asked in behalf of the appellant company. In these instructions the relation of fellow-servants, what constituted the relation, and when it existed, were fully made known to the jury in language selected by counsel for the appellant company, and the question whether that relation existed between the motorman, Hunt, and the appellee, was fully and fairly submitted to the jury, to be determined from the testimony under concededly correct instructions of the court; and the jury were expressly instructed in instruction No. 5, that if they believed, from the evidence, "under the instructions of the court, that the plaintiff and the servant or servants in control of and operating such car, at the time and place in question, were fellow-servants as defined in these instructions, then the plaintiff cannot recover under the first count of his declaration." This instruction, under the conceded facts of the case, secured to the appellant company all benefit that could have resulted from instruction No. 1 had it been given.

The verdict is entirely consistent with the view that the jury concluded that Hunt and the appellee were fellow-servants, and followed the direction of the court given in instruction No. 5, but found, from the evidence, that the appellant company furnished to such fellow-servant an improper, unsafe and defective motor or trolley car, and that the injury was occasioned by such failure of the appellant company to discharge its duty as master, as charged in the second count of the declaration.

We think there is no error in the record reversible in character. The judgment is affirmed.

*Judgment affirmed.*