THIRD DISTRICT—OCTOBER, 1911.          629

Owens v. Ill. Cen. Elec. Ry. Co., 163 Ill. App. 629.

# Mary E. Owens, Administratrix, Appellee, v. Illinois Central Electric Railway Company, Appellant.

1. NEGLIGENCE—*when absence of rules established.*   *Held,* under the evidence, that the jury were justified in holding the injury sued for in this case was the absence of rules adopted and enforced by the defendant company.

2. MASTER AND SERVANT—*when doctrine of assumed risk does not apply.*   Specific acts of negligence on the part of the master are not ordinarily assumed by the servant.

3. MASTER AND SERVANT—*when doctrine of fellow-servants does not apply.*   Where a servant is injured through the combined negligence of the master and a fellow servant and the negligence of the master is the proximate cause of the injury the master is liable notwithstanding the negligence of the fellow servant contributed to the injury.

4. CONTRIBUTORY NEGLIGENCE—*what not as a matter of law.*   It is not negligence as a matter of law for the road master of the defendant company to ride in the vestibule of one of its electric railway cars.

5. EVIDENCE—*what competent upon duration of life.*   The Wigglesworth tables showing the expectancy of life are competent in an action where the question of expectancy of life is material.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Fulton county; the Hon. ROBERT J. GRIER, Judge, presiding. Heard in this court at the November term, 1911. Affirmed. Opinion filed October 14, 1911.   Rehearing denied December 8, 1911. *Certiorari* denied by Supreme Court (making opinion final).

PAGE, WEAD, HUNTER & SCULLY, for appellant.

CHIPERFIELD & CHIPERFIELD, for appellee.

MR. PRESIDING JUSTICE PHILBRICK delivered the opinion of the court.

The defendant company, incorporated under the general railroad act of this state, owned and operated an electric railroad from St. David to Brereton, Illinois, commonly known as an interurban railroad. This line of road was ten or twelve miles long.   Canton was located about five miles north of St. David, and Brereton about four miles north of Canton and about one-

630     Appellate Courts of Illinois.

Owens v. Ill. Gen. Elec. Ry. Co., 163 Ill. App. 629.

half mile south of Norris. Plaintiff's intestate was in the employ of the defendant company and held what is commonly called the office of road master upon a railroad; his duties required him to see that the physical condition and the surface of the tracks were in proper condition for the operation of cars; he also had charge of all construction work. His duties required him to go over the track frequently and he did this almost every day. He had charge of the section gang who performed the labor upon the tracks under the direction of a foreman. The cars used upon the defendant's road were at his service at all times for the purpose of hauling material for the purpose of keeping the road bed in proper condition and repair, and he had authority to stop the cars at any point along the line of the road either for the purpose of alighting from or boarding the cars and, to that extent, the persons in charge of the cars were under his direction. A Mr. Morton held the office of president and general manager of this road, and a young man by the name of Brown was designated as superintendent. In the usual operation of its road the company operated but one car but at certain times during the day when a coal mine known as the Simmons mine was in operation an extra car was run between Canton and this mine in the morning and evening for the purpose of transporting the miners to and from the mine. This car was only run when the mine was being operated; the men in charge of the regular car depended on seeing it for information as to when it was being run. In going to and from his work, plaintiff's intestate was accustomed to ride upon the cars of the defendant and the persons in charge of the cars had directions to collect no fare from him and he did not have a pass. On the morning of the accident, plaintiff's intestate left his home about six-thirty for the purpose of going to his work; he boarded the regular car and he was riding in the front vestibule with the motorman and the

foreman of the section gang. When other cars than the one usually operated upon the road were running thereon for any purpose and they were required to pass each other, the only passing point in Canton was known as the Birch street switch. From the Birch street switch to the Simmons mine, a distance of from a mile and a half to two miles, the track was straight with nothing to obstruct the view, and any car running between the mine and the Birch street switch could readily be seen by persons at the switch and when a car was seen approaching, it was the duty and was customary for the car arriving at the switch to await the arrival of the other car. On the morning of the accident, there was a dense fog which obscured the view of the track. The car upon which plaintiff's intestate was riding arrived at the Birch street switch, but did not await the arrival of any car from the Simmons mine but proceeded on its way north toward the Simmons mine. It had proceeded but a short distance when it collided with a car coming from the Simmons mine, and as a result of that collision, the motorman, the section foreman, and the plaintiff's intestate were killed. It is to recover for the death of plaintiff's intestate that this action is brought.

The declaration consists of thirteen counts, four original counts and nine designated as additional counts. They allege, in various forms, acts of negligence on the part of the defendant, consisting of operating the road without any proper rules or regulations for the governing or movement of cars and the conduct of the men in charge thereof; that parties in charge of the operation and movement of the cars were permitted to run the same without any rules, regulations or directions ever being made or provided by defendant regarding the meeting and passing of cars. The second count charges that it was the duty of the defendant to transport or carry plaintiff's intestate to and from his work upon its cars and that it was its

632       APPELLATE COURTS OF ILLINOIS.

Owens v. Ill. Cen. Elec. Ry. Co., 163 Ill. App. 629.

duty to employ reasonably competent and safe men to manage and operate and control these cars, but that in that regard defendant neglected its duty, etc.     The fourth count charges that it was the duty of the defendant to inform and advise its servants in charge of the said car of the time and place at which they would be expected to meet and pass other cars, etc.     The other counts charge that it was the duty of the defendant to employ reasonably safe and competent and skillful persons to manage, operate and control their cars, but that it failed and neglected to perform this duty, etc. Also that it was its duty to provide and equip said cars with proper means and appliances for stopping the same and that it failed in this duty, etc.; that it became and was the duty of the defendant on account of the dense fog existing at the time, to inform plaintiff's intestate and the persons in charge of the regular car of the approach of the car with which they collided, and to give them information that upon that morning the car to Simmons mine was upon the track, all of which it failed to do; also that defendant failed upon the morning of the accident to give to the plaintiff's intestate and the persons in charge of the car upon which he was riding directions or orders to wait at the Birch street switch for the arrival of the car with which they collided.

The general issue was pleaded.     The trial resulted in a judgment against defendant for $7500.

It is insisted by defendant that the deceased had full knowledge of the method, manner and custom of the operation and movement of cars upon defendant's road, that he was familiar with all the conditions existing, that he was fully conversant with and knew of all of the movements and operation of the cars thereon without being given specific information in regard thereto, that by continuing in the employment of the defendant company that he assumed as one of the risks of his

employment the possibility of being injured in the manner and under the conditions by which he met his death. Defendant also insists that the death was caused by reason of negligence of other servants of the defendant who were then and there fellow servants of the deceased, that he was a fellow servant of the motorman and conductor, that the injury was caused by reason of their negligence in failing to stop at the Birch street switch, and await the approach of the car with which they collided.    It is also insisted by the defendant that the court erred in the admission and rejection of evidence and in the giving and refusing of instructions, and that the judgment is excessive.

Upon the charges contained in the various counts of the declaration that defendant did not employ competent and reliable servants for the management and conduct of its business and that it did not provide proper rules and regulations for the conduct of its servants and the movement of its cars and did not provide the necessary means whereby information might be conveyed to the employes and servants in charge of the cars upon the happening of conditions in the movement and operation of the cars when information of such conditions might become necessary to be communicated to them, an examination of this record discloses that there was, in fact, no one whose duty it was to supervise the management, control and operation of the defendant's cars.    Mr. Brown, who is designated as the superintendent, had been in the employ of the company from about the first of July, 1909, and he was the only person authorized to give specific orders to control the movements of these cars.    The only railroad experience that he had had prior to the time of his employment by the defendant was as a clerk and ticket agent in an office of the T. P. & W. Railroad; that in that office he had had no experience in the management, movement and operation of railroad trains or cars.    The record further discloses that the company

634     Appellate Courts of Illinois.

Owens v. Ill. Cen. Elec. Ry. Co., 163 Ill. App. 629.

did not have, and there were no rules promulgated or regulations provided by it by which the management and operation of cars were to be governed. That his duties as superintendent consisted of taking care of the cash, keeping books, furnishing supplies, etc., and the usual duties of that character; that while Mr. Morton was designated as and held the position of president of the company, his connection with the operation of the road was only that of an adviser whenever he may have been called upon for consultation; his occupation was that of an agriculturist.

The record further discloses that on the morning of the accident, the car known as No. 9 had gone to the Simmons mine with miners and was returning to the car barn at the time of the collision. The motorman in charge of this car was what is commonly called a "roustabout" at the barns, and when called upon to do so he took charge of this car running to the Simmons mine. There was no schedule time for the cars at any points excepting the time of leaving the towns through or to which they ran, and the general movement and operation of the cars was left to the servants in charge thereof. While it is true that a small road does not and could not require elaborate rules for its operation or the same definiteness and accuracy in the movement and operation of its cars as steam railroads on which trains are more frequently operated, it was a question of fact for the jury to determine whether under the conditions shown to exist, this company was guilty of negligence as charged against it in the declaration or some of the various counts thereof, and that question was properly left to the jury to be determined as a question of fact from all the evidence under proper instructions of the court.

Whether the deceased was killed by one of the ordinary hazards of his employment, the risk of which he assumed, was also a question of fact for the determination of the jury from all of the evidence relating to the

customs, methods and manner of the operations and movement of the cars and the knowledge that deceased had thereof.    Under the doctrine of assumed risks, specific acts of negligence on the part of the employer are not ordinarily assumed by the servant.    Upon the record the jury was warranted in finding that the master was guilty of the negligence charged and that the plaintiff's intestate was not killed by reason of one of the risks assumed by him in his employment.

Upon the contention that the plaintiff's intestate was killed through negligence of his fellow servants, the question as to who are fellow servants was one of fact for the determination of the jury.    The contention of defendant that although the death may have been caused as a result of the combined negligence of the defendant and of fellow servants the defendant is not liable, is not tenable; the rule is clearly and definitely settled in this state that where a servant is injured through the combined negligence of the master and fellow servants, and the negligence of the master was the proximate cause of the injury, the master is liable, notwithstanding that the negligence of a fellow servant contributed to the injury.  Ry. Co. v. McLallen, 84 Ill 109; Ry. Co. v. Powers, 74 Ill. 341; Yeates v. I. C. R. R. Co., 241 Ill. 205; C. U. T. Co. v. Sawusch, 218 Ill. 130; Kennedy v. Swift & Co., 234 Ill. 606.

The fact that deceased was riding in the vestibule and was in the habit of riding in the vestibule of defendant's car with its consent was not contributory negligence *per se,* but was a circumstance to be considered by the jury in determining the question of due care by deceased.

The contention that the admission of the Wigglesworth table showing the expectancy of life of deceased was error, is not well taken; the courts have recognized this is a legitimate method of proof of this question and the admission of these tables in evidence has frequently been sanctioned by the Supreme Court and

636        APPELLATE COURTS OF ILLINOIS.

Owens v. Ill. Cen. Elec. Ry. Co., 163 Ill. App. 629.

has been held as furnishing to the jury one means of arriving at the question of pecuniary loss by reason of the death.

The instructions given on behalf of the plaintiff critised by defendant are not subject to the criticisms made.        The fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth and seventeenth refused instructions offered in behalf of defendant are framed in such a manner that each instruction is composed of from seven to thirteen separate and distinct propositions, some of law and some of fact, and in each of these the court was asked to instruct the jury that the plaintiff must prove by a preponderance of the evidence that the law imposed upon defendant the duties which the respective counts of the declaration alleged the defendant owed to the plaintiff, and in this particular the instructions were erroneous and were properly refused.

The instructions which were asked by defendant and refused upon the question of fellow servants do not correctly state the law; there was no error in refusing the instructions offered upon that question.        We find no prejudicial error in the record upon the question of the admission and rejection of evidence, or in the giving or refusing of instructions.

We find no reversible error in this record, and the judgment is affirmed.

*Affirmed.*