Anna Schumann, Administratix, Appellee, v. Frank H. Mealiff and William E. Mealiff, Appellants.

Gen. No. 17,967.

1. MASTER AND SERVANT—*duty of employer to inspect machinery.* Where machinery is likely to get out of order or become unfit for use from wear or decay, a duty to inspect at reasonable intervals rests upon the employer and not upon the employe.

2. MASTER AND SERVANT—*where employe has a right to assume machinery is safe.* Where employe has no notice to the contrary, he has a right to assume that his employer has furnished safe machinery, and he is under no primary obligation to investigate and test its fitness and safety.

3. MASTER AND SERVANT—*master cannot delegate duty to inspect so as to relieve himself from responsibility.* The master's duty of exercising reasonable care to provide his servant with reasonably safe machinery and appliances, and his duty to make reasonable and proper inspection from time to time, are positive, primary and personal duties which cannot be delegated so as to relieve him from responsibility for their due performance.

4. MASTER AND SERVANT—*employe does not assume risk by failing to test boiler.* Where defendant directed plaintiff's intestate to start to work as engineer without telling him to test the boiler, and there was an official inspection certificate upon the wall, there was an assurance that it was safe to begin work without testing the boiler, and intestate did not assume risk of injury by failing to test for defects when none were apparent.

5. EVIDENCE—*where conversation is admissible to show knowledge of defective condition of boiler.* In an action for death of plaintiff's intestate, it is proper to permit a witness to relate a con-

Schumann v. Mealiff et al., 178 Ill. App. 254.

versation with defendant's foreman tending to show his knowledge of defective condition of the boiler, and it is immaterial whether conversation occurred before or after the foreman entered defendant's employ.

Appeal from the Superior Court of Cook county; the Hon. HOMER ABBOTT, Judge, presiding.   Heard in the Branch Appellate Court at the October term, 1911.   Affirmed.   Opinion filed March 13, 1913.

FRANK M. COX and R. J. FELLINGHAM, for appellants.

BOWLES & BOWLES, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.

In March, 1908, plaintiff's intestate, a licensed engineer, employed by appellants, met his death in consequence of the explosion of a boiler which he was operating.   Appellants were in the business of conducting grain elevators at Kensington, in Chicago, known as elevators A and B.   The power which operated the machinery in elevator A was supplied by two boilers and an engine, located in a building adjoining the elevator.   These boilers were of the tubular horizontal type, consisting of a cylindrical steel shell, fifteen feet in length and four feet in diameter, encased in a covering of brick and containing a number of tubes.   The space between the top of the tubes and the roof of the shell was 19 inches.   There was an oval manhole, 11 by 16 inches in size, at the top of each boiler.   Two weeks before the accident, the plaintiff's intestate was employed to operate these boilers and engine.   A year or two before that time, he had worked there as a fireman, and when he was again employed by appellants, he was asked if he was a licensed engineer and if he understood the work.   Upon receiving an affirmative reply, he was told that appellants desired to start the elevator on the following Monday (this conversation being on Saturday), to which Schumann replied "All right."   On the following Monday, Schumann started the boilers and engine.   Hanging on the

wall in the engine room at the time he began work was a certificate stating that the boilers had been inspected by the city boiler inspectors in August, 1907, at which time, according to the certificate, a "hammer test" had been made, and the safety valve loaded to allow 75 pounds pressure, and that "said boilers are in a safe condition to be used under the working pressure stated in this certificate for the purposes set forth, without danger to life or property from any imperfections in the same." The engine was operated continuously at 65 to 75 pounds pressure during the succeeding two weeks. There is some evidence to the effect that on Sunday, two weeks after he began work, Schumann washed and cleaned out the boilers. The next day, Monday, about three o'clock in the afternoon, the explosion occurred. The building in which the boiler was located was wrecked, and the boiler itself was hurled entirely out of the building. An examination of the shell at that time disclosed a rent in the upper part of the shell five or six feet long. Several pieces taken from the edges of this opening were identified and introduced in evidence. The thickness of the shell was originally five-sixteenths of an inch. Some of the pieces offered in evidence were less than one-eighth of an inch in thickness, tapering to 1/32 of an inch at the edges, and all were pitted and eaten with rust. It was also shown that the boiler was over twenty years old; that at the date of the last official inspection in August, 1907, the city boiler inspector had notified appellants that on account of the age of the boiler it could not be safely operated with more than 75 pounds of pressure. There was also some testimony to the effect that appellant's foreman had been told several years prior to the accident that the boilers were weak and defective, and that one engineer had quit work there on that account. The negligence charged in the declaration is the failure on the part of the appellants to use reasonable care to pro-

vide a reasonably safe boiler and to inspect the same. It was alleged that the condition of the boiler in question could have been ascertained by appellants by a reasonably careful inspection, and therefore appellants were chargeable with knowledge of its defective condition; that the deceased had no such knowledge, and had not equal means of knowledge with appellants. There were two trials, the first resulting in a disagreement and the second in a verdict for $10,000, from which the employers appeal.

While many legal propositions are submitted and discussed in the briefs of appellant's counsel, the main question raised is whether the duty of inspection devolved upon the deceased or upon his employers, under the facts of this case. Appellants' counsel take the position "that there is no specific duty of inspection *per se* imposed upon either the employer or employe," but that "the duty to inspect arises as an incident of the duty to exercise ordinary care, and may devolve upon either the employer or employe, depending upon the facts of the particular case." It is further contended that under the facts of this case, the duty of inspection and of making such tests as would have disclosed the weakness of the boiler, was a necessary part of the engineer's work, that he assumed the risk of injury therefrom by his contract of employment, and that he was guilty of contributory negligence in failing to make such tests.

In Armour v. Brazeau, 191 Ill. 117, in discussing an instruction concerning the question of inspection, the court said (p. 125):—

"There is a duty of the employer arising out of the liability of machinery or appliances to get out of order from time to time or to become unfit for use from wear or from age or decay, and this is the duty of inspection as meant by the law. While there is no absolute duty to keep appliances in safe condition, there is a duty to use reasonable care to keep them fit, and this duty may require inspection at reasonable intervals

and the employment of such tests as will reveal the condition of the machinery or appliances. *This duty of inspection rests upon the employer and not upon the employe,* and depends upon the character of the machine or appliance, since ordinary care may require an inspection oftener in one case than in another." (Italics ours.)

Part or all of the same language was quoted with approval in the following cases: Missouri Malleable Iron Co. v. Dillon, 206 Ill. 145, 153; Allan B. Wrisley Co. v. Burke, 203 Ill. 250, 257, and Chicago & E. I. R. Co. v. Snedaker, 223 Ill. 395, 405. In Chicago & E. I. R. Co. v. Hines, 132 Ill. 161, it is said (p. 169):

"The burden of furnishing safe machinery, appliances, surroundings, etc., is upon the master, and while the master is not to be held liable for defects and dangers of which the servant is fully informed, yet *the servant is authorized to rely upon the acts of the master in that respect, and is under no primary obligation to investigate and test the fitness and safety of the machinery, surroundings, etc., in the absence of notice that there is something wrong in that respect.*" (Italics ours.)

In other cases, it is held that the master's duty of exercising reasonable care to provide his servant with reasonably safe machinery and appliances, and his duty to make reasonable and proper inspection, from time to time, of such machinery and appliances, are positive, "primary and personal" duties, which cannot be delegated so as to relieve him from responsibility for their due performance. Schillinger Bros. Co. v. Smith, 225 Ill. 74; Chicago Union Traction Co. v. Sawusch, 218 Ill. 130, 134; affirming 119 Ill. App. 349, 352; Chicago & E. I. R. Co. v. Kneirim, 152 Ill. 458; Chicago & A. R. Co. v. Maroney, 170 Ill. 520; Baier v. Selke, 211 Ill. 512.

It is insisted, however, that the present case is an exception to the rule established by the foregoing authorities. It is urged that because the deceased was given full charge of the boiler, his means of knowledge

of the defective condition and his opportunities to learn of that condition were equal to those of the appellants', and for that reason, under the rule announced in Goldie v. Werner, 151 Ill. 551, and followed in many later cases, no recovery can be had by the representatives of the deceased engineer. In a certain very limited sense, it may be true that the deceased had opportunities, by working overtime or on Sundays, equal to those of the appellants, to learn of the defective condition of the boiler; and if there had been anything in the appearance of the boiler to warn him, or lead him to suspect weakness or defects, it may be that a failure on his part to make such tests as would have disclosed the defective condition, would amount to such a want of due care under such circumstances, or such an assumption of the risk, as would defeat a recovery. But there was no such warning. There was nothing in the apparent condition of the boiler to excite his suspicion. It was clearly shown by the evidence that the defects in the boiler were not discernible by careful observation or ordinary visual inspection, and that the only way they could have been discovered was by opening the manhole, crawling inside of the shell and tapping it from the inside with a hammer while lying upon the tubes. There were approximately 189 square feet of inner surface to be thus tapped in order to make such a test a complete one. It is obvious that to do this would require the plant to be shut down and would take considerable time. When the deceased was employed, no hint was given him that anything of this sort was expected of him, and he had no reason to doubt that the boiler was exactly what the official inspector's certificate, then hanging before his eyes, stated it to be, viz: "In a safe condition to be used without danger to life or property from any imperfections in the same." Appellants caused that certificate to be issued and placed there. Under the law it was their duty to

have such an inspection made. They knew the age of the boiler, the extent to which it had been used, and the care that had previously been given to its operation. Schumann did not know these things, and he had the right to assume, in the absence of notice to the contrary, that appellants had used reasonable care to furnish him with machinery that was reasonably safe for his use. Appellants did not tell him to test the boiler. They told him to "start it up on Monday." This, together with the official certificate, amounted to an assurance that it was safe to "start it up on Monday" without any test. In Kewanee Boiler Co. v. Erickson, 181 Ill. 549, a boiler maker was sent to make certain repairs on one of a battery of boilers. The foreman of the plant told him that "everything would be ready for him at seven o'clock Sunday morning" to make the repairs. When he arrived, at the appointed time, the boiler was cold, and without further inquiry, he went to work. While thus engaged, a sudden rush of steam came into the boiler and he was injured. To the contention that he assumed the risk because, by the exercise of reasonable care, he might have learned that the steam was not shut off in the other boilers of the battery, the court said (p. 553): "No reason appears why he should have looked for or examined to see if there was danger. * * * He had a right to rely on the assurance * * * that everything would be ready for him at seven o'clock Sunday morning,—the time he was directed to go to work." The same may be said in this case, viz: that no reason appears why Schumann should have crawled inside the boiler to make a hammer test either before he began his work, or during the two weeks the boiler was in use before it exploded. He had a right to rely on appellants' direction to start up on Monday morning and the official inspection certificate upon the wall, as at least an implied assurance of safety, in the absence of any notice, warning or hint

to the contrary, as well as on the assumption, arising from the legal duty of appellants, that due care had been exercised by them to furnish him a safe boiler. We do not think it can be held as a matter of law, nor found, as a conclusion of fact, under the evidence in this case, that Schumann assumed the risk of injury by failing to test the boiler for defects, when none was apparent. Nor do we think the jury's finding that he was not guilty of contributory negligence is contrary to the evidence.

It is also urged that the court erred in permitting a witness to relate a conversation with appellants' foreman tending to show his knowledge of the defective condition of the boiler. The witness fixed the time at about a year before the accident, and while the foreman denied that he ever had such a conversation with the witness, it was a question of credibility of witnesses whom the jury saw and heard. If true, the conversation was proper, in our opinion, whether it occurred before or after the foreman entered appellants' employ; for if the foreman knew the condition of the boiler when he was employed by appellants, it was as much his duty then to inform appellants of that fact as if the knowledge first came to him during his employment.

As to the letter from the city inspector, it was shown that appellants received it and acted upon it. We think there was no error in admitting a copy on proof of the loss of the original.

The judgment will be affirmed.

*Judgment affirmed.*