DANIEL R. WINKLER, Plaintiff-Appellant, *v.* HYSTER COMPANY *et al.,* Defendants-Appellees.—(GERRY BOWMAN, a/k/a Gary Bowman, Defendant.) Defendant.)

Fourth District No. 14022

Opinion filed November 10, 1977.

CRAVEN, P. J., dissenting.

Jerome Mirza, of Bloomington, for appellant.

Gunn, Hickman, Kesler, Jenkins & Vogel, Ltd., of Danville, for appellees.

Mr. JUSTICE GREEN delivered the opinion of the court:
This is another of a series of cases in which an employee eligible to

receive or having received workmen's compensation benefits from his employer nevertheless seeks to recover damages at law from that employer for the same injuries. The theory upon which recovery is sought is known as the "dual purpose doctrine." It permits recovery by the employee from the employer if the injuries resulted from a breach by the employer of a duty that did not arise out of the employer-employee relationship. (See 2A Larson, Law of Workmen's Compensation §72.80 (1976).) The theory recognizes that any recovery against the employer would be subject to setoff for the workmen's compensation benefits received by the employee.

Plaintiff Daniel R. Winkler, a welder, sued defendants Hyster Company and Gerry Bowman in the Circuit Court of Vermilion County for personal injuries he allegedly incurred while he was at his work station in the course of his employment with defendant Hyster. The complaint stated that plaintiff was injured when cargo fell from a lift truck which had been manufactured by Hyster in the ordinary course of its business and was being used by it in the plant. Upon defendants' motion, the entire nine-count complaint was dismissed. Plaintiff appeals the dismissal of every count but cites as error only the dismissal of a count directed solely against Hyster which alleges that the lift truck was defectively designed and manufactured and that proper instructions for its use were not provided with it. That count was dismissed pursuant to section 5(a) of the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.5(a)) upon a showing that plaintiff had received workmen's compensation benefits for the injuries. Section 5(a) provides in pertinent part:

> "No common law or statutory right to recover damages from the employer, * * * for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act." Ill. Rev. Stat. 1973, ch. 48, par. 138.5.

This court recently rejected the "dual purpose doctrine" as applied to the dual capacities of landowner and employer in *McCarty v. City of Marshall* (1977), 51 Ill. App. 3d 842, 366 N.E.2d 1052. The majority and dissenting opinions discussed the attempts to invoke the doctrine in Illinois. Much of the dispute between the panel deciding that case concerned interpretation of the opinion in *Laffoon v. Bell & Zoller Coal Co.* (1976), 65 Ill. 2d 437, 359 N.E.2d 125. There, consolidated cases concerned landowners and contractors who had been required by section 1(a)(3) of the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1(a)(3)) to pay compensation benefits to the injured employees of subcontractors because of the failure of the subcontractors to insure or guarantee payment of compensation as required. When subsequently

sued at law by the employees for those injuries, the owners and contractors claimed section 5(a) immunity. The supreme court ruled the immunity to be inapplicable and stated that section 5(a) immunity was limited to actions by the employers' "immediate employees." (65 Ill. 2d 437, 447, 359 N.E.2d 125, 130.) The court noted that the injured employees could clearly have sued the owners and contractors but for the "fortuitous circumstances" (65 Ill. 2d 437, 446, 359 N.E.2d 125, 129) of the failure of their immediate employers to insure and stated that to allow the owners and contractors to be subrogated to section 5(a) immunity would encourage the hiring of uninsured subcontractors.

The *McCarty* majority concluded that the plaintiff in its case was the immediate employee of the defendant and that the case was thus within the limits of the prohibition in section 5(a) as defined in *Laffoon.* Accordingly the majority followed the precedent of the appellate court cases in the State and ruled that immunities existed. The dissent, on the other hand, concluded that the supreme court's emphasis on the "fortuitous circumstances" theory indicated that recovery should be permitted against the owner when the employee would have had a cause of action but for the "fortuitous" circumstance that the owner was also the employer.

Although *McCarty* had not been decided at the time of oral arguments here, plaintiff recognizes the appellate decisions which it followed. He points out that most of those cases involve construction work, as did *McCarty*, and that recognition of the "dual capacity doctrine" there creates a problem of determining the nature of the duty allegedly breached and whether the duty arose out of the employment relationship. He also recognizes cases such as *Rosales v. Verson Allsteel Press Co.* (1976), 41 Ill. App. 3d 787, 354 N.E.2d 553, and *Williams v. State Compensation Insurance Fund* (1975), 50 Cal. App. 3d 116, 123 Cal. Rptr. 812, which reject the "dual purpose doctrine" when suit is brought by an employee against his employer for injuries incurred because of defects in tools or machinery which were manufactured or altered by the employer but not in the ordinary course of the employer's business. He contends that here, however, a clear line of demarcation exists between the employment relationship and the manufacture of the lift truck in the ordinary course of defendant's business. The heart of his theory is that the manufacture of the equipment created a duty to all who might be affected by its use, that it be free of defect, and that without relation to his status as an employee, he was one of those to whom the duty was owed.

Plaintiff's theory appears to be approved in *Douglas v. E. & J. Gallo Winery* (1977), 69 Cal. App. 3d 103, ___, 137 Cal. Rptr. 797, 799, where employees sued their employer for injuries incurred when a scaffolding

manufactured by their employer collapsed. The employer was alleged to have been in the business of manufacturing scaffoldings. The complaint was dismissed on motion based upon a workmen's compensation immunity substantially the same as ours. The opinion states that one of the grounds for recovery was "products liability based on defective manufacture, sale, etc., of the scaffold and its parts." In reversing the order of dismissal, that court relied upon the "dual purpose doctrine" reasoning that the defendant as a manufacturer had a duty to plaintiffs to make a scaffold that was not defective and that the duty was unrelated to the employment relationship because the scaffold was being manufactured along with others that would be sold to the public. Much of the reasoning of the opinion is based upon the argument that if the equipment had been purchased from another source, plaintiffs would have had third party actions and the correlative argument that had defendant sold the scaffolding to others, it would be liable for its defects.

We are not persuaded by these arguments. In *Laffoon,* in giving consideration to the "fortuitous circumstances" theory in refusing to permit owners and contractors to be subrogated to section 5(a) immunity, the court indicated that it was not using the theory to abrogate the immunity of section 5(a) when an employer was sued by its immediate employees. To deny the immunity when but for "fortuitous circumstances" it would not exist would make a drastic change in workmen's compensation law. Numerous circumstances can be conceived where an employee would have a third-party action against an employer for an injury caused by a co-employee but for the fortuitous circumstance that the employer did not elect to have the work of the co-employee performed by an independent contractor.

■■ Section 5(a) expressly sets forth that a cause by an employee against his employer is barred if the injury was sustained "in the line of duty as such employee." The reference is as to the status of the employee at the time of injury and not to the capacity of the employer at the time of the tortious conduct. Moreover, the alleged wrongful conduct of the employer here was related to the employment relationship in that the employer had a duty arising out of the employment relationship to furnish safe equipment to its employees. (See *Chicago Union Traction Co. v. Sawusch* (1905), 218 Ill. 130, 75 N.E. 797; Prosser, Torts 526 (4th ed. 1971).) That duty arises whether the equipment is purchased or manufactured by the employer either in connection with producing the same item for public consumption or otherwise. Even if a special duty arose with reference to the manufacture, that duty would be as intermingled with the employment relationship as are those of an owner who is also an employer. The express terms of section 5(a) bar the

bringing of the count in question. We do not deem the circumstance such as to require a different interpretation.

The argument is presented that, as set forth in the dissent in *Rosales v. Verson Allsteel Press Co.*, the common law rights of recovery abrogated by section 5 are only those which were in existence prior to the enactment of section 5. If that were so, the instant case, sounding in the strict liability tort of defective product, would not be barred because that theory of recovery was not recognized in this State until the decision in *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182.

The case of *Moushon v. National Garages, Inc.* (1956), 9 Ill. 2d 407, 411, 137 N.E.2d 842, 844, *appeal dismissed* (1957), 354 U.S. 905, 1 L. Ed. 2d 1425, 77 S. Ct. 1294, is cited in support of these arguments. There, in ruling that section 5 was a bar to a common law suit by a covered employee against his employer even though the injury he received was not of the type compensable by the Act, the court spoke of the Act as a "substitute for previous rights of action of employees against employers" and stated that the employer's immunity from suit at law was meant to include those "for which there was an existing right of action at the time the act was passed." On the other hand, in *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1958), 13 Ill. 2d 460, 462, 150 N.E.2d 141, 143, in ruling that the scaffold act did not supersede the employer's immunity of section 5 the court stated: "Section 5(a) bars a common-law action by an employee against his employer for injuries received in the course of his employment, and it also bars a statutory action against his employer for his wrongful death. [Citations.]" Neither case, however, concerned the question involved here of the employer's immunity from suit upon a common law action that had not evolved at the time of the passage of the act.

■■ Section 5 appears on its face to grant employers immunity to common law actions regardless of the date of the evaluation of the theory of recovery involved. To construe the section otherwise leads to incongruous results. For example, because the wife's cause of action for loss of consortium was first recognized in *Dini v. Naiditch* (1960), 20 Ill. 2d 406, 170 N.E.2d 881, a wife would have a common law right of action against the covered employer for loss of consortium of her husband but a husband would have no such action in regard to his wife. A strict liability action for defective product would lie but one for negligent manufacture would not. An action for wrongful death would not lie but one for pain and suffering incurred by the injured employee (an action first recognized in *Murphy v. Martin Oil Co.* (1974), 56 Ill. 2d 423, 308 N.E.2d 583) would be sustainable. A complete re-examination would be required as to the liability to their covered employees of various governmental and charitable entities who had immunity from common law suit at the time of the enactment of section 5 but because of constitutional and statutory

changes and the evolution of the case law have lost that immunity. We conclude that the common law immunity of section 5 was not intended to be limited to actions then recognized.

■■ A further reason exists why the count in question was properly dismissed. It fails to set forth the breach of a duty arising out of the manufacture of the lift truck. The tort allegedly set forth is that of strict liability defective product. Although the question was not discussed in *E. & J. Gallo Winery*, the mere manufacture of a defective product does not create liability in the manufacturer for resultant injury.

In *Suvada* the supreme court stated that it was adopting a theory basically the same as that set forth in section 402A of the Restatement (Second) of Torts (1965). There the action is stated to arise out of the "*sale*" (emphasis added) of a product in defective condition. The comments to section 402A describe the justification for imposition of strict liability to be "that the seller, by marketing his product for use and consumption" has assumed a special responsibility to the consuming public. The United States Circuit Court of Appeals for the Second Circuit in *Delaney v. Towmotor Corp.* (2d Cir. 1964), 339 F.2d 4, 6, in applying New York law interpreted section 402A to be applicable without a sale if the party to be charged "has placed a defective article in the stream of commerce by other means." There the defective article had been bailed by the manufacturer to a prospective customer for trial use. A similar rule was stated in *Link v. Sun Oil Co.* (1974), ___ Ind. App. ___, 312 N.E.2d 126. In *Dunham v. Vaughan & Bushnell Mfg. Co.* (1967), 86 Ill. App. 2d 315, 334, 229 N.E.2d 684, 693, this court stated "The language of *Suvada* itself is all inclusive as to the parties to a chain who *places the article into commerce*" (emphasis added). In *Galluccio v. Hertz Corp.* (1971), 1 Ill. App. 3d 272, 274 N.E.2d 178, the rental of an automobile was ruled to be a sufficient placement into commerce to impose upon the lessor strict liability for injuries to the users of the car resulting from its defect.

Black's Law Dictionary (4th ed. 1951) defines the word "commerce" as the "exchange of goods, productions or property of any kind." Here there was no allegation of an exchange of any kind. The lift truck had been neither sold, rented or bailed, nor had goods, services, choses in action or money been received in exchange. Possession had not changed for the purpose of a sale or for any reason. The item of equipment had presumably remained with Hyster. We conclude that it had not been placed in commerce. The complaint did not set forth a cause of action of strict liability defective product.

Accordingly, we affirm the dismissal of the complaint.

Affirmed.

MILLS, J., concurs.

Mr. PRESIDING JUSTICE CRAVEN, dissenting:

The majority applies a restrictive construction of section 5(a) of the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.5(a)) and again refuses to acknowledge the validity of the dual capacity doctrine in Illinois. *Laffoon v. Bell & Zoller Coal Co.* (1976), 65 Ill. 2d 437, 359 N.E.2d 125; see dissenting opinion, *McCarty v. City of Marshall* (4th Dist. 1977), 51 Ill. App. 3d 842, 366 N.E.2d 1052.

Section 5(a) begins by setting out the limits of coverage of the Workmen's Compensation Act:

> "No common law or statutory right to recover damages from the employer, * * * is available to any employee who is covered by the provisions of this Act * * *." Ill. Rev. Stat. 1973, ch. 48, par. 138.5(a).

The majority, without considering what common law was intended by the legislature to be included in the act, assumes that the strict product liability doctrine adopted in Illinois by *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182, was included under the act. The portion of paragraph (a) referring to the common law or statutory right of an employee was originally created and enacted in 1911 (Ill. Rev. Stat. 1911, ch. 48, par. 128 (current version at Ill. Rev. Stat. 1973, ch. 48, par. 138.5)), long before the *Suvada* doctrine was generally recognized as law. Several cases have discussed the legislative purposes of the act and in so doing have delineated the coverage. One such case stated:

> " 'The act was designed as a substitute for *previous rights of action* of employees against employers and to cover the whole ground of the liabilities of the master, and it has been so regarded by all courts. * * * It is therefore clear that the words "accident" and "accidental injuries" used in the act, were meant to include every injury suffered in the course of employment for which there was an existing right of action *at the time the act was passed;* also to extend the liability of the employer to make compensation for injuries for which he was not previously liable and to limit such compensation.' " (Emphasis added.) *Moushon v. National Garages, Inc.* (1956), 9 Ill. 2d 407, 411, 137 N.E.2d 842, ___, *appeal dismissed* (1957), 354 U.S. 905, 1 L. Ed. 2d 1425, 77 S. Ct. 1294.

Clearly the words "common law" in the act were meant to include *only* those common law rights of action that existed at the time the act was passed and did not include or apply to subsequently developed rights of action such as strict product liability. See dissenting opinion of Mr. Justice Simon in *Rosales v. Verson Allsteel Press Co.* (1976), 41 Ill. App. 3d 787, 354 N.E.2d 553.

Thus, section 5(a) does not bar an action by the employee against the employer under the strict liability doctrine and the majority's reliance upon the supposed exclusive remedy is erroneous.

Further, the majority errs in adhering to the view expressed in *McCarty* that the dual capacity doctrine is not a valid rule in Illinois. In so doing they ignore its basic underpinnings and the recognition and adoption of that doctrine by the supreme court in *Laffoon*.

The obligations that the defendant in the present case owed as a manufacturer of equipment to users and bystanders was entirely independent of those obligations imposed upon an employer. (See 2A Larson, Workmen's Compensation Law §72.80 (1976).) Defendant as a manufacturer owed a duty to *all* users and bystanders, including those users or bystanders in his employ, to market a product that was not in a defective condition or unreasonably dangerous. (Restatement (Second) of Torts §402(a) (1965).) The plaintiff can hardly be expected to assume the risk of a defectively designed or manufactured product when he enters into an employment relationship.

The policy goals of the strict product liability doctrine therefore should not be subverted by the mere fortuitous circumstance that the injured individual was an employee of the manufacturer whose product caused the injury. Certainly if the injured individual had not been an employee it is clear he would have had a strict product liability cause of action against the defendant. To deny the plaintiff such a cause of action because he is an employee gives the defendant more protection than envisioned by the act. In effect, with this result the manufacturer can test new pieces of equipment utilizing any of his employees and limit his liability for any resulting injury from a defective product to that recoverable under the Workmen's Compensation Act. This result is not only unfair but incorrect in view of the adoption of the dual capacity doctrine in *Laffoon* and the application of that doctrine to a case similar to the present one wherein the injured employee was allowed to pursue his cause of action on a strict liability theory. *Douglas v. E. & J. Gallo Winery* (1977), 69 Cal. App. 3d 103, 137 Cal. Rptr. 797.

The majority attempts to show that the lift truck had not been placed in the stream of commerce by resorting to narrow restrictive definitions. However, in so doing, they completely ignore the explanatory comments of the United States Court of Appeals in *Delaney v. Towmotor Corp.* (2d Cir. 1964), 339 F.2d 4, wherein the phrase "stream of commerce" was first used. The court therein stated in referring to the bailment of a defective product and to a restrictive definition of the word sale:

> "We can see no sensible reason why Delaney's [bailee] rights against Towmotor [bailor] should be less extensive on the facts here than if Towmotor had first sold the hilo to its distributor* * *." *Delaney,* 339 F.2d 4, 6.

There is no sensible reason in the present case why the plaintiff's rights should be less extensive than if the lift truck was sold to a distributor and placed into the stream of commerce. The lift truck actually entered the

stream of commerce through defendant's manufacturing operation. The defendant most certainly did not gratuitously transfer the lift truck from his inventory to the department in which it was used. There was an exchange albeit an internal one. The fork lift is undoubtedly being depreciated by the defendant and to maintain as the majority does that there was no sale or the fork lift was not placed in the stream of commerce is elevating form over substance.

I would reverse the decision of the trial court and remand with direction to reinstate plaintiff's complaint.