**Curtis LATENDRESSE, Plaintiff and Appellant,**

**v.**

**Robert PRESKEY, d. b. a. A–1 Machine Welding and Manufacturing Co., Defendant and Appellee.**

**Civil No. 9693.**

Supreme Court of North Dakota.

March 20, 1980.

Eaton & Van de Streek, Minot, for plaintiff and appellant; Nevin Van de Streek, Minot, argued.

McGee, Hankla, Backes & Wheeler, Minot, for defendant and appellee; Richard H. McGee II, Minot, argued.

SAND, Justice.

Curtis Latendresse [Latendresse] appealed from a summary judgment dismissing his cause of action against Robert Preskey, Minot, North Dakota, d. b. a. A–1 Machine Welding & Manufacturing Company [Preskey]. We affirm.

Latendresse, on 20 April 1978, was a regular employee of Preskey, who had workmen's compensation coverage and whose business consisted of welding and fabricating steel parts for various heavy machines and equipment. In response to a request (presumably a special order), Preskey manufactured a steel pin, approximately 2½ feet in length and 3½ inches in diameter, to be used to secure a portion of the arm of a P & H backhoe owned by Peterson Excavating Company of Minot, one of Preskey's customers. Latendresse, on 20 April 1978, was injured (while installing the steel pin) in the course and scope of his employment and made application for and received workmen's compensation benefits.[1]

Preskey moved for summary judgment dismissing Latendresse's action on the basis that § 65–01–08, North Dakota Century Code, barred Latendresse's claim against Preskey. Latendresse did not actively resist Preskey's motion for summary judgment because he believed that the trial court would have no choice but to follow the decision in *Schlenk v. Aerial Contractors, Inc.*, 268 N.W.2d 466 (N.D.1978). Instead, Latendresse decided to seek a review particularly as to whether or not this court would adhere to the *Schlenk* case in rejecting the doctrine of dual capacity. The court ordered summary judgment of dismissal, and noted that Preskey was a contributing employer under Title 65 of the North Dakota Century Code and as a matter of law, pursuant to § 65–01–08, NDCC, was relieved from all liability for injuries sustained by Latendresse. The court also noted that Latendresse applied for and received benefits for an injury sustained in course of employment pursuant to § 65–01–01 and § 65–05–06, NDCC, and concluded that the court was without jurisdiction of the parties and of the subject matter, and granted the motion for summary judgment. The court, in meeting the requirements of Rule 54(b), North Dakota Rules of Civil Procedure, expressly determined there was no just reason for delay in the entry of judgment and directed that a judgment with prejudice on its merits be entered. Summary judgment was entered from which this appeal is taken.

The issues in this case can be summarized as follows:

---

1. The material facts in this case may not be in dispute but in a very unusual procedure the appellant in his brief stated "The particular facts surrounding the accident are set forth in the copy of the complaint found in the appendix." The answer to the complaint in essence denied every allegation except those specifically admitted, and admitted only allegations in paragraphs I and II of the complaint. The answer makes allegations which are not denied. Some of the facts relied upon by Latendresse cannot be considered facts in the true sense of the word upon which the relief sought can be granted.

(1) Does Title 65 of the North Dakota Century Code (Workmen's Compensation) bar a suit brought by an employee against his contributing employer for injuries sustained while in the course and scope of his employment?

(2) Does the doctrine of dual capacity create an exception to or a modification of the Workmen's Compensation Act?

Latendresse alleged (not admitted) that the pin was fabricated or manufactured from steel stock in Preskey's possession and that Preskey finished off the end of the pin by cutting it to length with a torch rather than finishing it off by using a machine tool. Latendresse further alleged (not admitted) that the end of the pin which had been cut by the torch contained crystallized carbon which made it highly susceptible to fragmentation or splintering if subjected to sudden outside forces. It was also alleged (but not admitted) that Preskey had reasonably anticipated that the pin would not be restricted to his business or premises but that the pin would become a component part of the P & H backhoe after the pin was manufactured. Latendresse also alleged (but it was not admitted) that he was instructed by Preskey to insert the pin into the sleeve of the P & H backhoe by pounding upon the pin with a sledgehammer, and he did as he was directed, which resulted in fragments of the defective pin shattering upon impact by the hammer, causing fragments to enter Latendresse's right eye causing personal injury to the extent that 90% of his vision therein was impaired.[2]

Latendresse contended that Preskey acted in a dual capacity; in one instance as an employer and in the other as a manufacturer, and that as a manufacturer he produced a product which was unsafe. Neither the complaint nor any admission in the answer nor any other type of information was submitted that would indicate that Preskey was making pins as described earlier herein to be sold generally to the public, or that pins like the one in question were made and held for sale to the public generally.

At the outset, we recognize a difference between the *Schlenk* case and the case at hand. The basic issue in the *Schlenk* case was whether or not the Workmen's Compensation Act barred a separate legal action by an employee against his employer and fellow employees for willful and intentional injuries inflicted upon the employee if the employee filed for and received workmen's compensation benefits.

While the issues are readily distinguishable between this case and the *Schlenk* case, the rationale regarding the application of the Workmen's Compensation Act and the results reached in *Schlenk* have application to this case.

In the instant case the issue is whether or not the doctrine of dual capacity creates an exception to or modification of the Workmen's Compensation Act. As a result, the legal decision per se in the *Schlenk* case has very little bearing on this case, but the discussion and effect of provisions in the Workmen's Compensation Act as they may relate to the dual capacity doctrine is very helpful, if not persuasive.

Section 65–01–08, NDCC, is pertinent to the issue involved here and provides as follows:

"Where a local or out of state employer has secured the payment of compensation to his employees by contributing premiums to the fund, the employee, and the parents of a minor employee, or the representatives or beneficiaries of either, shall have no right of action against each contributing employer for damages for personal injuries, but shall look solely to the fund for compensation."

*Stine v. Weiner*, 238 N.W.2d 918 (N.D.1976), in effect held that the remedy provided for in this section is exclusive, and that any common law action is barred.

In *Boettner v. Twin City Construction Co.*, 214 N.W.2d 635 (N.D.1974), our Court said:

Section 65–01–08 is very clear and explicit. It provides that when an employer

---

**2.** The foregoing allegations are recited even though they are not admitted to develop a bet-

ter understanding of what Latendresse may have had in mind in appealing.

has secured the payment of compensation to *his* employees for contributing premiums to the Fund, the employee has no right of action against *such contributing employer* or against any agent, servant, or other *employee* of *such employer* for damages." 214 N.W.2d 640.

The purpose of the workmen's compensation law is set out in § 65–01–01, which provides as follows:

"The state of North Dakota, exercising its police and sovereign powers, declares that the prosperity of the state depends in a large measure upon the well-being of its wage workers, and, hence, for workmen injured in hazardous employments, and for their families and dependents, sure and certain relief is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding, or compensation, except as otherwise provided in this title, and to that end, all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are abolished except as is otherwise provided in this title."

It can be readily determined that § 65–01–08 is in complete harmony with the purposes of the compensation law as set out in § 65–01–01, NDCC.

The injuries covered under the Workmen's Compensation Act are defined in § 65–01–02(8), which basically provides that it covers any injury arising in the course of employment. Section 65–05–05 in effect provides that the workmen's compensation fund shall be disbursed to employees or their dependents in case of death who have been injured in the course of their employment, are subject to the provisions of the Act and are employed by employers who are subject to the Act.

Significantly, § 65–05–06, NDCC, has particular application to the instant case. It provides:

"The payment of compensation or other benefits by the bureau to an injured employee, or to his dependents in case death has ensued, shall be in lieu of any and all rights of action whatsoever against the employer of the injured or deceased employee."

In the instant case Latendresse applied for and received workmen's compensation benefits.

Latendresse relied heavily upon *Douglas v. E. & J. Gallo Winery*, 69 Cal.App.3d 57, 137 Cal.Rptr. 797 (1977), an action by an employee who was injured when the elevator scaffolding device on which he was working collapsed. The scaffolding was identical in design to the equipment manufactured by the employer for market to the public. The employee sued, alleging negligence on the part of the manufacturer and the failure to provide a safe place to work, breach of warranty and products liability. The California Court of Appeals held that the plaintiff may state a cause of action based on manufacturer's liability even though the defendant is also the employer and the alleged injuries took place in course of employment provided that the product involved is manufactured by employer for sale to the public rather than for sole use of the employer. In the *Douglas* case the court quoted from Larson, *The Law of Workmen's Compensation* (1976) Vol. 2a, § 72.80 at page 14–112:

"Under this doctrine, an employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as employer." 137 Cal. Rptr. 799.

Larson, in his *Law of Workmen's Compensation* (1976), Vol. 2a, § 72.80, page 14–112, in the September 1979 Cumulative Supplement, page 154, discussed the *Douglas* case and also *Mercer v. Uniroyal Corp.*, 49 Ohio App.2d 279, 361 N.E.2d 492 (1977), wherein a plaintiff truck driver who was furnished by a lease agreement to Uniroyal was injured in a crash which occurred when a truck in which he was riding had a blowout. The defective tire was manufactured by Uniroyal. The plaintiff brought an action for personal injuries predicated upon

product liability. The majority of the court agreed that the plaintiff was able to collect workmen's compensation coverage and also bring an action against the employer in a dual capacity.

Significantly, however, Larson, after such discussion, made the following observation:

"This case, and the preceding California case of *Douglas,* are unsound applications of the dual-capacity concept. They overlook the simple fact that the use of the product was a routine and integral part of the employment. Dual capacity requires a distinct separate legal *persona,* not just a separate theory of liability of the same legal person."

Even if we were to follow the *Douglas* case, we would have another difficulty, and that is the factual situation does not fit within the theory announced by the *Douglas* court. Under the *Douglas* theory, it was necessary that the employer manufacture the product for sale to the public rather than for the sole use of the employer, whereas in the instant case we have no evidence that the pin which was involved in the accident was manufactured for the public or a use other than the specific purpose for which it was used in the case. There was no evidence from which any inference could be drawn that Preskey manufactured the pin for sale to the public either at his place or at other retail places.

In *Winkler v. Hyster Co.,* 54 Ill.App.3d 282, 12 Ill.Dec. 109, 369 N.E.2d 606 (1977), the plaintiff, a welder, was injured while at his work station by cargo which fell from a lift truck. The lift truck was manufactured by the employer in the ordinary course of business and was being used in the plant. The employee's suit for personal damages was dismissed. The appellate court affirmed, refusing to apply the doctrine of dual capacity. The injured employee asserted that the exclusivity clause barred only those common law actions in existence at the time of the creation of the workmen's compensation act, and because product liability did not exist at that time it was not barred. The court rejected this, noting that construction of the provision would lead to incongruous results.

A different result was reached in *Smith v. Metropolitan Sanitary District of Greater Chicago,* 61 Ill.App.3d 103, 18 Ill.Dec. 452, 377 N.E.2d 1088 (1978), where two companies, the O'Neil Construction Co. and the Groves & Son Company entered into a joint venture agreement for the purpose of a construction project. The employee was hired by the joint venture and it was admitted that he was not an employee of O'Neil. The claimant was injured when a truck with a defective emergency brake leased to the joint venture by O'Neil rolled into the claimant, crushing his legs. The claimant collected compensation from the joint venture and brought a damage suit against O'Neil. The court permitted the suit against O'Neil. Significantly, O'Neil was a member of the joint venture, but as a separate entity he leased trucks to the joint venture. Here we have a situation where O'Neil acted in a dual capacity, one as a member of a joint venture and the other as a separate entity leasing trucks to the joint venture.

In *Needham v. Fred's Frozen Foods, Inc.,* 359 N.E.2d 544 (Ind.App.1977), the claimant was burned when a pressure cooker, which the employer had designed, manufactured, and installed, exploded and sprayed him with scalding grease. The claimant argued that the lawsuit should be maintained against the employer under the dual capacity theory. The court, however, found that the injury was "precisely of the kind" to be covered by the workmen's compensation, and that it did not arise from an obligation apart from the employer-employee relationship, and noted that the claimant's argument would do considerable violence to the exclusive nature of the compensation remedy. See also, *McAlister v. Methodist Hospital of Memphis,* 550 S.W.2d 240 (Tenn.1977).

In *Vaughn v. Jernigan,* 144 Ga.App. 745, 242 S.E.2d 482 (1978), the claimant, an employee of Central Lumber Co., sustained injuries while working with a power saw on the defendant's premises. The premises were leased by Central Lumber Company from the defendant, who was also Central's

president, a director and stockholder. The claimant had recovered workmen's compensation benefits from Central Lumber Co. and then sought recovery from the defendant for having a defective, unsafe condition on the property. The court held that the tort recovery against the landlord would be improper since he could not be labeled a third-party tortfeasor. Any knowledge he had of the defective condition would come to him through his involvement in the compensation and not as a landlord.

After careful consideration of the basic requirements of the dual capacity doctrine, as set out by 2a Larson, § 72.80, page 14–112, case law on the subject, and the rationale set out in *Schlenk, supra*, we conclude that the claimant, Latendresse, failed to establish that Preskey came within the dual capacity doctrine, or that Preskey acted in such a manner so as to create an exception to the provisions of the North Dakota Workmen's Compensation Act, Title 65, NDCC. If we were inclined to rule in favor of Latendresse under the dual capacity doctrine as he asserts it, we would have to disregard and do violence to several provisions of the North Dakota Workmen's Compensation Act which have been set out earlier herein. We do not believe that justice will permit us to do that. The summary judgment of the district court is affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.