MIGUEL ANGEL ROSALES, Plaintiff-Appellant, *v.* VERSON ALLSTEEL PRESS CO. *et al.,* Defendants.—(YOUNG DAYBROOK, INC., Defendant-Appellee.)

First District (1st Division) No. 62287

Opinion filed August 16, 1976.

SIMON, J., dissenting.

Robert F. Lisco, of Lisco and Field, and Sidney Z. Karasik, both of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith and D. Patterson Gloor, of counsel), for appellee.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff, Miguel Angel Rosales, suffered the loss of a hand while operating a punch press in the course of his employment by defendant Young Daybrook, Inc., a manufacturer of automobile car seats. Plaintiff initially brought a common law action in the circuit court of Cook County against the press manufacturer. Later he added his employer as a defendant. The employer (hereinafter referred to as defendant) moved to dismiss, alleging that plaintiff was an employee of defendant, that as

employer it had paid plaintiff's workmen's compensation benefits and that suit was barred under section 5(a) of the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.5), which provides in pertinent part:

"(a) No common law or statutory right to recover damages from the employer * * * for injury * * * sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee* * *."

Defendant's motion to dismiss was granted and plaintiff appeals. The action against the press manufacturer is pending in the trial court and is not involved in this appeal.

Plaintiff does not dispute that the punch press was supplied by defendant for his use in the manufacture of car seats and that he was an employee of defendant at the time of the accident and was covered by the Workmen's Compensation Act. He contends, however, that section 5(a) is not a bar because he sued defendant, not as plaintiff's employer, but as the "quasi manufacturer" of the punch press. He argues that because the defendant modified the two-button safety control on the press to a one-button control it thereby became a "quasi manufacturer" of the press as to plaintiff and was separately liable because the dangerous condition which resulted from this modification caused plaintiff's injury. He also alleged that defendant's action in modifying the safety control was willful and wanton.

The sole question for decision is whether the exclusive remedy of section 5(a) of the Workmen's Compensation Act bars plaintiff's action against his employer.

The exclusive remedy provision is an essential element of the workmen's compensation scheme. The legislature, in passing the Workmen's Compensation Act, dealt comprehensively with the rights of an injured employee and his employer. The Act established a system of liability without fault and abrogated the common law defenses of contributory negligence, assumption of risk and fellow servant. In exchange for this, it required the employee to give up certain elements of damage recoverable in a common law negligence action. This was accomplished by prohibiting common law and statutory actions by the employee against the employer for injuries received in the course of employment. (Ill. Rev. Stat. 1973, ch. 48, par. 138.5; *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1958), 13 Ill. 2d 460, 150 N.E.2d 141; *Moushon v. National Garages, Inc.* (1956), 9 Ill. 2d 407, 137 N.E.2d 842, *dismissed,* 354 U.S. 905, 1 L. Ed. 2d 1425, 77 S. Ct. 1294.) In 2A A. Larson, Workmen's Compensation §65.10 (1975), the author states that the exclusive remedy provision "is part of the *quid pro quo* in which the sacrifices and gains of employees and employers are to some extent put in

balance, for, while the employer assumes a new liability without fault, he is relieved of the prospect of large damage verdicts."

■■ The exclusiveness of the workmen's compensation remedy applies even when the injured employee does not have an additional common law or statutory remedy against a third person. *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 175 N.E.2d 785.

> "Workmen's compensation is remedial in its nature and is based upon the principle that the cost of the medical services and compensation provided is chargeable to the employment as a cost of production or operation and is borne directly by the employer and indirectly and ultimately by the general public as a part of the cost of the articles produced or of the services rendered by such employer to the public." 1 Angerstein, Illinois Workmen's Compensation 13 (Rev. ed. 1952).

Under the workmen's compensation scheme, there is a very high frequency of loss because negligence is not an element and the traditional defenses are eliminated. Counterbalancing the high frequency of loss are the large number of employers spreading the risk and the fact that the compensation provided by the statute is more modest than is often awarded in common law actions.

The continued effectiveness of the workmen's compensation scheme depends upon the continued ability to spread the risk of such losses. This, in turn, depends upon the maintenance of the legislative scheme. If employers are required to provide not only workmen's compensation, but also to defend and pay in common law actions, their ability to spread such risks through reasonable insurance premiums is threatened. Any exceptions to the exclusive remedy provision of the Workmen's Compensation Act or any theories which allow that provision to be circumvented must be strictly contrued.

■■ Plaintiff's argument that defendant was sued in its dual capacity of a "quasi manufacturer" of the punch press ignores the reality that an employee suing the one who employs him is suing his employer—a fact not changed because the employer performs more than one work-related function. Defendant's primary function is the manufacture of automobile car seats; it also performs the function of supplying its employees with the tools to perform their parts in the primary function. The supplying of tools is a natural incident of the employer-employee relationship. Plaintiff's argument that this gives rise to a dual capacity is unpersuasive. The modification of the safety control on the punch press does not impose on the defendant manufacturer of automobile car seats the dual capacity of "quasi manufacturer" of punch presses. The defendant does not sell punch presses. It only provides them for employees. This is an incident of

the employment relationship. Further, even under the dual capacity doctrine, the second capacity must be one that creates legal obligations on the part of the employer to the public in general and not just to its employees. "The decisive dual-capacity test is not concerned with how separate or different the second function of the employer is from the first but with whether the second function generates obligations unrelated to those flowing from the first, that of employer." (2A A. Larson, Workmen's Compensation §72.80 (1975).) Such a limitation is required because without it the doctrine, extended to its logical limits, would nullify the exclusive remedy provision of the Workmen's Compensation Act. To sustain the doctrine of dual capacity here would circumvent the exclusive remedy provision of the Workmen's Compensation Act, because all employers would then occupy a dual capacity upon the furnishing of tools to their employees. Such a result would repudiate the long line of Illinois Supreme Court cases holding the Workmen's Compensation Act to be the exclusive remedy against the employer for work-related injuries and would nullify the legislative scheme for compensating work-related injuries.

In *Neal v. Roura Iron Works, Inc.* (1975), 66 Mich. App. 273, 238 N.W.2d 837, *appeal denied,* plaintiff while operating his drill press suffered the loss of an arm. He accepted workmen's compensation benefits and later sued his employer claiming that the accident occurred when a glove he was wearing, sold to him by the president of defendant, became caught in the drill press. He alleged that a breach of warranty arose from the sale of the gloves, inasmuch as the gloves were unfit for use during the operation of the drill press. The court held that plaintiff's suit was based on the employer-employee relationship and was barred by the exclusive remedy provision of the Workmen's Compensation Act. The court pertinently observed (66 Mich. App. 273, 278-79, 238 N.W.2d 837, 840):

> "If we held otherwise, we would be opening doors to the institution of innumerable product liability suits by injured employees against their employers. Such a consequence would not only emasculate the exclusive remedy provision but would also serve to effectively undermine the entire statutory scheme of the Workmen's Compensation Act. The legislature has established the Workmen's Compensation Department, not the circuit courts, as the proper forum to determine in most instances the liability of an employer to an injured employee. The adoption of plaintiff's arguments would dramatically alter this situation by allowing substantial circuit court participation in the field of workmen's compensation. It is not for us, but for the Legislature, to so transform the scope of the Workmen's Compensation Act."

In the case before us, plaintiff's injuries could not have possibly happened but for the fact that he was employed by defendant as a punch press operator.

To sustain his claim of dual capacity, plaintiff relies in good measure upon *Duprey v. Shane* (1952), 39 Cal. 2d 781, 249 P.2d 8. But that case is not persuasive under the facts before us. There plaintiff, employed by defendant, a chiropractor, was injured in the course of her employment. Defendant, as a chiropractor, treated her for her injury and caused the plaintiff to suffer a second injury. The court held that defendant was subject to a common law action for the second injury and that the Workmen's Compensation Law was not plaintiff's exclusive remedy as to it because defendant, in treating plaintiff, was acting as a chiropractor and not as her employer.

The inapplicability of *Duprey* to the case at bar is clearly shown by *Williams v. State Compensation Ins. Fund* (1975), 50 Cal. App. 3d 116, 123 Cal. Rptr. 812, *hearing denied*. In that case plaintiff sued his employer, Wallace Brothers, for injuries received in the course of his employment while operating a spraying machine. Plaintiff, relying on *Duprey*, alleged that defendant designed, manufactured and supplied the spraying machine for the use of its employees and that in designing and manufacturing the spraying machine Wallace Brothers assumed a dual role as employer and manufacturer, incurring common law liability in the latter capacity. The appellate court upheld the trial court's holding that workmen's compensation proceedings were the exclusive remedy for work-connected injuries, saying (50 Cal. App. 3d, 121, 123 Cal. Rptr. 814):

> "The analogy to *Duprey* is faint and unpersuasive. There the doctor-employer stepped outside his role as employer, elected to treat the injured employee as a doctor and subjected himself to malpractice liability. The court, nevertheless, recognized the case as an unusual one, saying: 'It is true that the law is opposed to the creation of a dual personality, where to do so is unrealistic and purely legalistic.' (39 Cal. 2d at p. 793, 219 P.2d at p. 15.)
>
> "Here there is no allegation that Wallace Brothers manufactured spraying machines as a business enterprise separate from that employing plaintiff Williams. Rather, the complaint shows that the firm created the machine for use by its own employees in its own production or service operations. Many entrepreneurs build and supply appliances and equipment exclusively for use in their own plants or premises. That sort of activity is integral and auxiliary to the firm's principal manufacturing or production operation. To conjure a nonemployer doubleganger out of such auxiliary activity represents an *ad hoc* theory devised to avoid the statute. *(Azevedo*

*v. Able,* 264 Cal. App. 2d 451, 459, 70 Cal. Rptr. 710.) Unlike the malpractice injury inflicted in *Duprey v. Shane,* Mr. Williams' injury arose out of and in the course of his employment.* * *."
Similarly, defendant in the case at bar provided the punch press for use by its employees in its own production and plaintiff's injury arose out of and in the course of his employment.

In *Hudson v. Allen* (1968), 11 Mich. App. 511, 161 N.W.2d 596, plaintiff, employed by defendant in his drug store and while in the course of her employment, was injured by the door of a laundromat also owned by defendant. She sued, relying on *Duprey v. Shane* (1952), 39 Cal. 2d 781, 249 P.2d 8, claiming that since she sued defendant as the owner of the laundromat (of which she was not an employee) he was to be considered "some person other than * * * the employer" and thus her action was not barred by the Workmen's Compensation Act. The trial court agreed, but the appellate court reversed (11 Mich. App. 517, 161 N.W.2d 598): "Our conclusion is that, had the legislature desired the word 'employer' as used in part 3, §15 to be understood in a dual sense under certain circumstances, it could have so provided."

Plaintiff also relies on the fact that the safety guard was bypassed for economic reasons. Assuming the truth of this contention, however, does not aid plaintiff. In *Santiago v. Brill Monfort Co.* (1960), 11 App. Div. 2d 1041, 205 N.Y.S.2d 919, *aff'd,* 10 N.Y.2d 718, 176 N.E.2d 835, 219 N.Y.S.2d 266, plaintiffs brought suits against their employer alleging that they were injured as a result of their employer's wanton, intentional, unlawful and affirmative wrongful acts in removing certain safety guards from machines operated by them, that these acts in effect constituted an assault by the employer and that the injuries were not accidental within the purview of the Workmen's Compensation Law. The appellate division reversed the denial of the employer's motions to dismiss (11 App. Div. 2d 1041, 205 N.Y.S.2d 919, 920):

> "There is no allegation that the guards were removed with a deliberate intent to injure plaintiffs. Rather, it is alleged that the removal was 'for the sole purpose of increasing * * * production for greater increment and profits.' In our opinion, these complaints plead causes of action for injuries suffered by workmen as a result of industrial accidents in a covered employment, for which the Workmen's Compensation Law accords to the employer immunity from an action for damages *(Artonio v. Hirsch,* 3 App. Div. 2d 939, 163 N.Y.S.2d 489)."

Nor does the allegation that defendant's action in modifing the safety control was willful and wanton and in direct violation of the Federal Occupational Safety and Health Act help plaintiff. An action whether grounded on negligence or on willful and wanton misconduct is still a

common law action. The legislature imposed no qualification, limitation or exception in section 5(a) on the prohibition of common law actions against the employer.

In *Azevedo v. Abel* (1968), 264 Cal. App. 2d 451, 70 Cal. Rptr. 710, *hearing denied,* the court sustained the dismissal of a suit against plaintiff's employer for damages incurred in the course of her employment. Plaintiff claimed that her injuries were willfully inflicted and that therefore the Compensation Act was not a bar to her action. The court rejected this contention (264 Cal. App. 2d 451, 459-60, 70 Cal. Rptr. 710, 715):

> "No question is raised here as to coverage by the workmen's compensation law. The same law, in Labor Code sections 3600-3601, declares itself the exclusive source of entitlement for covered injuries. A damage suit as an alternative or additional source of compensation, becomes permissible only by carving a judicial exception in an uncarved statute. Whatever the question of judicial power, the *ad hoc* theories devised to avoid the statute possess shallow appeal. Resort to a fictitious theory of noncompensability relegates the employee to the dubious benefit of a lawsuit he may lose. The theory which poses a civil action as a sanction against deliberate torts is enfeebled by the compensation law's penalty for serious and willful misconduct.[1] Neither moral aversion to the employer's act nor the shiny prospect of a large damage verdict justifies interference with what is essentially a policy choice of the Legislature. The policy choice is to provide employees economic insurance against disability in exchange for the speculative possibility of general damages; to offer the augmented award for serious and willful misconduct in trade for the relatively rare award of punitive damage."

In *Finch v. Swingly* (1973), 42 App. Div. 2d 1035, 348 N.Y.S.2d 266, plaintiff in the course of his employment by Swingly was working underneath an automobile hoist in defendant's garage when the lift collapsed and injured him. He charged that Swingly acted willfully and wantonly in directing plaintiff to use the lift when defendant knew it was defective. In New York, the Workmen's Compensation Law does not bar a common law action for damages where the injury is due to an intentional tort by the employer. The court reversed the denial of defendant's motion to dismiss, holding that the complaint could not be interpreted to allege that defendant intentionally caused the lift to

---

[1] Effective July 1, 1975, the Illinois Workmen's Compensation Act contains a provision similar to the California Act considered in *Erickson v. Workmen's Compensation Appeals Board* (1970), 12 Cal. App. 3d 388, 90 Cal. Rptr. 706. (Ill. Rev. Stat. 1975, ch. 48, par. 138.19(m).)

collapse on plaintiff and that, read as a whole, the pleading stated no more than a cause of action for negligence barred by the Workmen's Compensation Law.

In addition to *Duprey*, plaintiff relies on other cases. None of them is persuasive or controlling.

In *Panagos v. North Detroit General Hospital* (1971), 35 Mich. App. 554, 192 N.W.2d 542, the court allowed plaintiff's common law action because it was not based on the fact that she was employed by the defendant, but upon the fact that there was a deleterious material in the food she purchased at defendant's cafeteria. Defendant was in fact the operator of a cafeteria and as such acquired the obligations of a vendor as to all who ate at the cafeteria, whether employees or third persons.

*Reed v. Steamship Yaka* (1963), 373 U.S. 410, 10 L. Ed. 2d 448, 83 S. Ct. 1349, involved a longshoreman injured while loading The Yaka, which at the time was being operated by a bareboat charterer. The bareboat charterer had hired its own longshoremen rather than hiring an independent stevedoring company as is customary. The Longshoremen's and Harbor Workers' Compensation Act provides that it is the exclusive remedy against the employer for work-related injuries to longshoremen. However, the plaintiff sued the bareboat charterer for breach of its warranty of seaworthiness. In allowing the cause of action, the court noted that not only was the bareboat charterer "an employer of longshoremen but was also a bareboat charterer and operator of a ship and, as such, was charged with the traditional, absolute, and nondelegable obligation of seaworthiness which it should not be permitted to avoid." 373 U.S. 415, 10 L. Ed. 2d, 452. As Larson notes, the obligations of the bareboat charterer regarding seaworthiness would have existed even if it had not employed longshoremen. 2 A. Larson, Workmen's Compensation §72.80 (1975). Illinois has no line of cases comparable to the superiority of traditional remedies, such as a shipowner's warranty of seaworthiness. *Dintelman v. Granite City Steel Co.* (1976), 35 Ill. App. 3d 509, 341 N.E.2d 425, *appeal denied.*

Although *Unruh v. Truck Insurance Exchange* (1972), 7 Cal. 3d 616, 102 Cal. Rptr. 815, 498 P.2d 1063, speaks of dual legal personality with reference to a workmen's compensation insurance carrier, it identifies no second capacity nor any legal obligations other than those of an insurance carrier. Instead, the court based the insurance carrier's common law liability to the employee on the quality of the carrier's conduct— intentional tort as contrasted with negligent tort.

In *Artonio v. Hirsch* (1967), 3 App. Div. 2d 939, 163 N.Y.S.2d 489, the court held that a complaint charging that plaintiff was injured as the result of the willful, reckless and unlawful acts of his employer and its officers, directors and stockholders in locking, or tampering with, safety devices

on a power press which he operated pleaded a cause of action for injuries suffered by a workman as a result of an industrial accident in a covered employment, for which the workmen's compensation law accorded immunity to the employer and its co-employees acting in the course of their employment, but, because the complaint did not allege that the employer had failed to provide the compensation required, the complaint was insufficient as to the employer. However, as to the individual employees, interpreting the complaint to allege that they, in tampering with the safety devices, did not act within the scope of their employment, the court held that the Workmen's Compensation Law did not bar a common law action against them.

*Jones v. Insurance Co. of North America* (La. App. 1974), 303 So. 2d 902, is not a dual capacity case. The court concluded that the plaintiff's injuries did not occur in the course and within the scope of the employer's business.

In *Costanzo v. Mackler* (1962), 34 Misc. 2d 188, 227 N.Y.S.2d 750, *aff'd,* 233 N.Y.S.2d 1016, plaintiff sued a fellow employee for injuries arising out of a defect in a truck owned by a fellow employee and rented to the parties' employer. The court rejected defendant's defense of co-employee under the Workmen's Compensation Statute because the claim was predicated on defendant's responsibility as a truck owner for the defective floor board and was not related to the common employment of the parties. Defendant, who was not the employer, did in fact own the truck and as owner had legal obligations not just to his co-employee but also to their parties.

In *Marcus v. Green* (1973), 13 Ill. App. 3d 699, 300 N.E.2d 512, plaintiff's employer was not only a contractor, in which capacity he employed plaintiff, but was a partner in a partnership which owned real estate. The ownership of real estate generates legal obligations to third parties independent of the owner's status as an employer. In *Dintelman v. Granite City Steel Co.* (1976), 35 Ill. App. 3d 509, 341 N.E.2d 425, *leave to appeal denied,* the court considerably limited the scope of its earlier decision in *Marcus,* pointing out that there the entity sued was distinct from plaintiff's employer, while in *Dintelman* the corporate entity owning the property was the same corporate entity employing plaintiff. The court recognized that the corporate entity sued was plaintiff's employer and that the exclusive remedy against an employer is the Workmen's Compensation Act.

*B. W. Sales Co. v. Industrial Com.* (1966), 35 Ill. 2d 418, 220 N.E.2d 405, *Grossman v. Industrial Com.* (1941), 376 Ill. 198, 33 N.E.2d 444, and *Ryan v. State Auto Parts Corp.* (1930), 255 Ill. App. 422, are inapposite. In them, the issue was whether a stockholder and officer of a corporation was also an employee and, therefore, entitled to workmen's compensation

benefits. Holding that the claimants in these cases were employees, the courts furthered the purpose of the Workmen's Compensation Act—to provide benefits to individuals injured in the course of the employing entity's business. In contrast, application of the dual-capacity doctrine in this case would frustrate the legislative purpose of providing employers with immunity to common law actions.

In *Boatman v. Jordan* (1968), 102 Ill. App. 2d 55, 243 N.E.2d 644, the court refused to find that the corporate president was also an employee and, therefore, held that the plaintiff's suit was not barred as being against a fellow employee.

We hold that plaintiff's suit against defendant Young Daybrook, Inc., is a suit by an employee against an employer and is barred by the exclusive remedy provisions of section 5(a) of the Workmen's Compensation Act.

Judgment affirmed.

BURKE, J., concurs.

Mr. JUSTICE SIMON, dissenting:

Plaintiff lost his hand in a punch press after his employer altered it by removing protective safety devices which the manufacturer had placed on the press. Plaintiff would have had a cause of action against the manufacturer under the strict product liability doctrine established by *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182, had it failed to provide these safeguards. The manufacturer, a stranger to both the plaintiff and his employer, acted to insulate itself from such liability by equipping the press with the safety devices.

The rationale of the strict product liability doctrine is that users of products must be protected against defective and dangerous conditions which might attend their use even though the injured person may have no privity of contract with the producer of the product. Plaintiff's employer, by altering the press, deprived plaintiff of safeguards which the law required the manufacturer to provide for the safety of the plaintiff as a potential user. The issue in this case is, thus, whether the exclusive remedy provision of section 5(a) of the Workmen's Compensation Act immunizes an employer from a common law action for removing equipment a manufacturer incorporated in his product to make it safer and to satisfy the obligations imposed by the strict product liability doctrine. The majority refers to a " long line of Illinois Supreme Court cases holding the Workmen's Compensation Act to be the exclusive remedy against the employer for work-related injuries." However, none of them dealt with the precise issue raised by this appeal. *Dintelman v. Granite City Steel Co.* (1976), 35 Ill. App. 3d 509, 341 N.E.2d 425, the most recent

Illinois case discussing the exclusive remedy provision of the Workmen's Compensation Act, did not resolve this issue. It adhered to *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1958), 13 Ill. 2d 460, 150 N.E.2d 141, by holding that an employee covered by workmen's compensation could not recover against his employer under the Structural Work Act for injuries suffered while working on the employer's premises. The employer was not charged in either *Dintelman* or *Gannon* with affirmative conduct in removing a safeguard that a third person, in order to avoid strict product liability, had placed on a machine for the user's protection.

The Workmen's Compensation Act was adopted long before the *Suvada* doctrine was generally recognized by the law. I therefore find no justification for imputing to the legislature an intent to adopt a workmen's compensation scheme which permits an employer to withhold from his employee the protection the *Suvada* doctrine requires a manufacturer to provide.

An employee is entitled to protection beyond workmen's compensation against his employer who to increase profits endangers him by reconstructing equipment manufactured by others. The law can provide a remedy for this reprehensible conduct by regarding the employer as acting in this setting as a "quasi-manufacturer" rather than an employer. When sued in that capacity, he is not protected by the exclusive remedy provision of section 5(a) of the Act which applies only to those acting in the capacity of an employer. I disagree with the majority in that I do not regard as an incident of the employment relationship conduct of an employer which intervenes to deprive an employee of protection the law obligates the manufacturer of a product to provide. Nor would I regard the employer as acting any the less in the role of a "quasi-manufacturer" because after removing protective devices from machinery manufactured by others, the employer furnishes the unsafe machine only to his own employee rather than to the public generally. Finally, making the employer amenable to a common law action notwithstanding the exclusive remedy provision of section 5(a) by treating the employer as having acted in this case in a dual capacity, does not, as the majority asserts, apply to all tools furnished by an employer for an employee's use. The characterization of an employer as acting in the capacity of a "quasi-manufacturer" can be limited to instances when his own alteration of tools or machines manufactured by others removes equipment designed to protect users against injury. In these situations the employer should be held responsible to his employees if his conduct makes the machine more dangerous than when it was manufactured. I would not extend the *quid pro quo* justification for the exclusive remedy provision explained in the majority opinion to deprive an employee as a condition of an

employment relationship of the protection afforded him by the strict product liability doctrine.

Our Supreme Court has viewed the Workmen's Compensation Act as a humane law of a remedial nature which is to be liberally construed, whenever permissible, to effect the purposes of the Act. *(Shell Oil Co. v. Industrial Com.* (1954), 2 Ill. 2d 590, 596, 119 N.E.2d 224; *B. W. Sales Co. v. Industrial Com.* (1966), 35 Ill. 2d 418, 423, 220 N.E.2d 405.) It strikes me as inconsistent with this view of the Act to interpret it in a way which permits an employer to exploit his employees by removing from the machinery he requires them to use safety devices which the law imposes a duty on the manufacturer of the machinery to provide. Conduct of this type should not be shielded by a humane law, particularly where, as in this case, the employee claims the employer altered the press to increase its profits. I would reverse the order of dismissal by characterizing the defendant's conduct complained of in this action as that of a "quasi-manufacturer" rather than an employer, and actionable notwithstanding the exclusive remedy provision of section 5(a). Anything less, unnecessarily and improperly deprives an employee of the full protection of the strict product liability doctrine. To preserve that protection, I would depart from the conclusion reached in *Santiago v. Brill Monfort Co.* (1960), 11 App. Div. 2d 1041, 205 N.Y.S.2d 919, the opinion cited by the majority with facts most similar to those in this case, and I would not inflexibly apply to the facts of this case the conventional principle that the workmen's compensation scheme provides an exclusive remedy. Moreover, affording an employee additional protection in the special circumstances of this case will not diminish the continued effectiveness of workmen's compensation. The workmen's compensation system has survived the holding in *Miller v. DeWitt* (1967), 37 Ill. 2d 273, 226 N.E.2d 630, which permits a third party sued by an employee to seek indemnity from the employer whose active negligence caused the injury, thereby in effect providing for an indirect recovery by the employee against the employer. I do not believe that a system which withstood that holding will be crippled by the deviation from the exclusive remedy rule proposed by this dissent.