[Civ. No. 2804. Fifth Dist. Apr. 18, 1977.]

JAMES EDWARD DOUGLAS, Plaintiff and Appellant, v.
E. & J. GALLO WINERY, Defendant and Respondent.

THOMAS P. MITCHELL, Plaintiff and Appellant, v.
E. & J. GALLO WINERY, Defendant and Respondent.

**COUNSEL**

McCormick, Barstow, Sheppard, Coyle & Wayte, Lowell T. Carruth and James P. Wagoner for Plaintiffs and Appellants.

Parichan, Renberg & Crossman and Murray M. Aron for Defendant and Respondent.

**OPINION**

**HOPPER, J.—** The main issue presented in this appeal is the liability (other than under workers' compensation) of an employer to his employee for injuries incurred in the course of employment in the use of a product which is also manufactured and sold to the public by the employer.

Appellants, employees of respondent, filed separate identical complaints against E. Gallo, J. Gallo, J. P. Jones and Does I through L for personal injuries suffered when the scaffolding on which they were working collapsed. Respondent was subsequently served as Doe XXI.[1] Each complaint (insofar as respondent was involved) alleged several causes of action based on:

1. Negligent manufacture, sale, etc., of the elevator scaffold device.

2. Failure to provide safe place to work (admitted by appellants as being barred by the workers' compensation remedy and therefore not discussed herein).

3. Breach of warranty in the manufacture, sale, etc., of the cables and socket of the scaffold.

[1]The complaints alleged that Does XXI through L (including respondent) were "manufacturers, sellers, distributors, designers, suppliers, jobbers, repairers and owners" of the device which failed to work properly.

4. Products liability based on defective manufacture, sale, etc., of the scaffold and its parts.

Respondent demurred to the complaints. The court sustained the demurrer without leave to amend on the grounds that the sole remedy was under the workers' compensation provisions of the Labor Code and that the superior court lacked jurisdiction under Labor Code section 3601.[2]

For the purposes of this opinion, the term "manufacture" includes manufacturer, seller, distributor or any other person who may be subject to products liability.

We hold that a plaintiff may state a cause of action (or causes of action) based on manufacturer's liability even though the defendant is also the plaintiff's employer and the alleged injuries take place in the course of employment, provided that the product involved is manufactured by the employer for sale *to the public* rather than being manufactured for the sole use of the employer.

The basis for our holding is the dual capacity doctrine established in *Duprey* v. *Shane* (1952) 39 Cal.2d 781 [249 P.2d 8]. See also, *Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616 [102 Cal.Rptr. 815, 498 P.2d 1063] and *Hoffman* v. *Rogers* (1972) 22 Cal.App.3d 655 [99 Cal.Rptr. 455].

As stated by 2A Larson, Law of Workmen's Compensation (1976) section 72.80, at page 14-112: "Under this doctrine, an employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition

---

[2]Labor Code section 3601 provides in part:

"(a) Where the conditions of compensation exist, the right to recover such compensation, pursuant to the provisions of this division is, except as provided in Section 3706, the exclusive remedy for injury or death of an employee against the employer or against any other employee of the employer acting within the scope of his employment, except that an employee, or his dependents in the event of his death, shall, in addition to the right to compensation against the employer, have a right to bring an action at law for damages against such other employee, as if this division did not apply, in either of the following cases:

"(1) When the injury or death is proximately caused by the willful and unprovoked physical act of aggression of such other employee.

"(2) When the injury or death is proximately caused by the intoxication of such other employee."

to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as employer."

2 Hanna, California Law of Employee Injuries and Workmen's Compensation (2d ed.) after discussing *Duprey*, states in section 22.03 at pages 22-35 and 22-36: "Subsequent attempts to transform an employer or insurance carrier into a third person have met with no success, the courts being unwilling by legalistic machinations to make unwarranted inroads into the proper jurisdiction of the appeals board." (See *Deauville* v. *Hall* (1961) 188 Cal.App.2d 535 [10 Cal.Rptr. 511]; *Noe* v. *Travellers Insurance Company* (1959) 172 Cal.App.2d 731 [342 P.2d 976]; *Hazelwerdt* v. *Industrial Indemnity Exchange* (1958) 157 Cal.App.2d 759 [321 P.2d 831]; cf., *Park* v. *Union Mfg. Co.* (1941) 45 Cal.App.2d 401 [114 P.2d 373].)

Those cases are distinguishable from the instant case. *Park* was decided long before *Duprey*. Furthermore, in *Park,* a partnership case, the employer did not in fact assume a different role. The other cases cited by Hannah merely hold that under the particular facts dual capacity was improper. These cases do not stand for the proposition that dual capacity is itself an "unwarranted inroad." In fact, *Duprey* itself at page 793 cautioned against legal machinations. In *Noe* at page 736, the court in distinguishing its facts from *Duprey* states: "Shane does not transform the employer *into* the doctor to fashion a new personality by some Svengali projection; it merely recognizes that the doctor who did treat the employee happened also to be her employer. In brief, Shane *was* a doctor, and a living 'third party' physician who affirmatively and medically treated the employee and did so negligently; . . ."

In *Deauville,* the employer was not acting in another capacity when the existing industrial injury was aggravated by the employer's first-aid man. Nor was the insurance carrier in *Hazelwerdt.* Thus, unlike the contention here, in none of those cases was the employer acting in a separate capacity and relationship to the employee. The employer was simply acting as an employer and not performing *extra*-employer activities.[3]

---

[3]See also *Wickham* v. *North American Rockwell Corp.* (1970) 8 Cal.App.3d 467 [87 Cal.Rptr. 563]; *Burns* v. *State Compensation Ins. Fund* (1968) 265 Cal.App.2d 98 [71 Cal.Rptr. 326]; *State Comp. Ins. Fund* v. *Superior Court (Breceda)* (1965) 237 Cal.App.2d 416 [46 Cal.Rptr. 891]. *Wickham* involved failure of a coemployee doctor to diagnose a tubercular condition. The attempt of the court in *Hoffman* v. *Rogers, supra,* 22 Cal.App.3d 655, 661-662 to distinguish *Wickham* on a one transaction/two transaction basis is a distinction without a difference. In addition, there is no reason to limit the *Duprey* rule to medical malpractice. The critical issue is the capacity or role in which the

The Supreme Court certainly considered *Duprey* and the dual capacity doctrine still viable in *Unruh* v. *Truck Insurance Exchange, supra,* 7 Cal.3d 616.

Two recent cases in the appellate courts are also distinguishable here. In *Shook* v. *Jacuzzi* (1976) 59 Cal.App.3d 978 [129 Cal.Rptr. 496], the defective machine was designed *solely* for the use of the employer in its own manufacturing process and was not sold to the public, as is shown by the affidavits for summary judgment. In *Williams* v. *State Compensation Insurance Fund* (1975) 50 Cal.App.3d 116 [123 Cal.Rptr. 812], there was no allegation that the employer was in the business of manufacturing the injury-causing instrumentalities for sale to the public.

Mere separateness in the divisions or the departments is insufficient to establish dual capacity. As 2A Larson, The Law of Workmen's Compensation, section 72.80 at page 14-117 stated: "The decisive dual-capacity test is not concerned with how separate or different the second function of the employer is from the first, but with whether the second function generates obligations unrelated to those flowing from the first, that of employer." This explains (as well as the fact that they antedate *Duprey*) such cases as *Walker* v. *City and County of San Francisco* (1950) 97 Cal.App.2d 901 [219 P.2d 487] (separate departments of the same local government).[4]

Cases in other jurisdictions are in conflict.[5]

---

defendant is acting when the tort sued upon is committed. In *Breceda* and *Burns* the insurance carrier did not have the duty of safety instruction imposed by statute on the employer. Thus, in none of these cases cited in this footnote was the defendant stepping from the role of employer (or carrier).

[1]The early New York decision which is often relied on for subsequent holdings limiting recovery to workers' compensation involved an injury on a separate property of the same employer/owner. (*Winter* v. *Peter Doelger Brewing Co.* (1916) 175 App.Div. 796 [162 N.Y.S. 469]. affd., 226 N.Y. 583 [123 N.E. 895]. (*Winter* contains no citation of authority).) This was followed in *Williams* v. *Hartshorn* (1946) 296 N.Y. 49 [69 N.E.2d 557, 558] and in *Jansen* v. *Harmon* (Iowa 1969) 164 N.W.2d 323.

[5]In addition to previously cited cases, see:
(a) Workers' Compensation Act (or similar federal statute) held *not* exclusive remedy (and thus allowing suit based on theory of dual capacity): *Reed* v. *The Yaka* (1963) 373 U.S. 410 [10 L.Ed.2d 448, 83 S.Ct. 1349] (see Bue, Jr., *In the Wake of Reed* v. *The S.S. Yaka* (1967) 18 Hastings L.J. 795); *Jackson* v. *Lykes Steamship Co.* (1967) 386 U.S. 731 [18 L.Ed.2d 488, 87 S.Ct. 1419]; *State* v. *Luckie* (Fla.App. 1962) 145 So.2d 239; *Mazurek* v. *Skaar* (1973) 60 Wis.2d 420 [210 N.W.2d 691] (government wearing two different hats); *Marcus* v. *Green* (1973) 13 Ill.App.3d 699 [300 N.E.2d 512] (but see *Dintelman* v. *Granite City Steel Co.* (1976) 35 Ill.App.3d 509 [341 N.E.2d 425] (reading *Marcus* narrowly), *Walker* v. *Berkshire Foods, Inc.* (1976) 41 Ill.App.3d 595 [354 N.E.2d 626] and

Characterizing a defendant as an "employer" and therefore automatically cloaked with immunity from common law suit is a simplification that tends to cloud proper analysis. The focus should be on the defendant's responsibility for his own acts or omissions where a different duty to take care or make sure that care is taken arises than that imposed on an employer.

Our society is pluralistic. The same person (real or artificial) from time to time obviously adopts many *roles* in relationship with others. Our law is replete with these many different roles.

■ An employer *qua* employer enjoys the cloak of immunity weaved by the workers' compensation law. But when an employer engages in the dual capacity of manufacturer of a product for sale to the public, the employer assumes all of the duties and liabilities of such manufacturer. In electing to manufacture elevator scaffolding for the public rather than obtaining it from a third party manufacturing firm, the defendant should be held to the standard of care of manufacturers generally.

This is not a legalistic machination; nor is it "conjuring a nonemployer doppelganger"[6] out of the manufacturer's activity. There is nothing ghostly or fictional about two capacities. The dual capacity concept is within the highest tradition of analytical jurisprudence. Dual capacity recognizes the long accepted doctrine that every person is a bundle of rights, no rights, liabilities and immunities.[7] Which combination of jural opposites or jural correlatives apply is dependent in the specific role

---

*Rosales* v. *Verson Allsteel Press Co.* (1976) 41 Ill.App.3d 787 [354 N.E.2d 553]); *Mager* v. *United Hospitals of Newark* (1965) 88 N.J.Super. 421 [212 A.2d 664], affd., 46 N.J. 398 [217 A.2d 325] (noted in *Burns* v. *State Compensation Ins. Fund* (1968) 265 Cal.App.2d 98 [71 Cal.Rptr. 326]);
 (b) Cases holding workers' compensation to be the exclusive remedy; *Neal* v. *Roura Iron Works, Inc.* (1975) 66 Mich.App. 273 [238 N.W.2d 837]; *Hudson* v. *Allen* (1968) 11 Mich.App. 511 [161 N.W.2d 596]; *Lewis* v. *Gardner Engineering Corp.* (1973) 254 Ark. 17 [491 S.W.2d 778] (see also excellent dissent therein); *Rosales* v. *Verson Allsteel Press Co.*, *supra*, 41 Ill.App.3d 787 [354 N.E.2d 553] (see also dissent therein); *Gothreaux* v. *Gulf Oxygen Co.* (La.App. 1974) 289 So.2d 235, *Kottis* v. *U.S. Steel Corp.* (7th Cir. 1976) 543 F.2d 22 (applying its interpretation of Indiana law).
 Many of these cases are discussed and dual capacity analyzed in Kelly, *Workmen's Compensation and Employer Sueability: The Dual Capacity Doctrine* (1974) 5 St. Mary's L. J. 818-832.
 [6]*Williams* v. *State Compensation Insurance Fund* (1975) 50 Cal.App.3d 116, 121 [123 Cal.Rptr. 812].
 [7]See Hohfeld, Fundamental Legal Conceptions (Cook ed. 1919) page 36, *passim*.

assumed at the particular *time* involved.[8] While it may be that a defendant cannot *simultaneously* be two distinct entities, a·defendant can act in two distinct capacities *sequentially.*

Allowing the conduct of a manufacturer to deprive an employee of the full protection of the law which obligates a manufacturer to provide safe products is really not an incident of the intended employment. ■ When an employee is hired, he assumes all of the hazards and risks of employment which naturally flow from that employment. He does not as employee give up his rights as a user against a manufacturer. The workers' compensation law preserves the right of an employee to sue third parties. As pointed out by Kelly, *Workmen's Compensation and Employer Sueability: The Dual Capacity Doctrine* (1974) 5 St. Mary's L. J. 818, 832: "A third-party action should be no less viable because the duty owed by the tortfeasor springs from an extra-relational capacity of the employer rather than arising from another third party. All the reasons supporting the justness of recovering from third parties generally can be assembled to support dual-capacity liability. The employee, in accepting employment, can be presumed to have accepted all the conditions of his employment obvious ·to him and to have implicitly or explicitly agreed to the workmen's compensation compromise. But he cannot be presumed to have waived his right to bring common law actions against negligent third parties who coincidentally share the role of employer."

If the employee uses his own personally purchased tools in his employment, he does not give up his right to sue in manufacturer liability cases simply because the manufacturer was also at a different time his employer. It would be grossly unfair to deny a similar right to sue where the same tools were furnished by the employer and had been manufactured by the employer for sale to the public. The same gross inequity would be present if common law liability were denied where an employee buys an automobile manufactured by his employer which contains a hidden defect and, while driving the car in the course of his employment (other than in the course of test driving the car while the defect is being repaired), suffers injury as a result of that defect.

---

[8]The very words "person" and "role" are related. "Personna" once meant the disguise adopted by the actor. (See Noonan, Jr., Persons and Masks of the Law, p. 27.) As Shakespeare told us in As You Like It: "All the world's a stage, and all the men and women merely players."

The Workers' Compensation Act was adopted long before products liability became generally recognized by the law. We recognize that if the Legislature wished to include manufacturer's liability within the workers' compensation scheme, they possess the power to do so. We do not assume that the Legislature in adopting the statute had an intent to withhold from an employee the protection the manufacturer's liability doctrine now requires. (For a similar position, see *Rosales* v. *Verson Allsteel Press Co.* (1976) 41 Ill.App.3d 787 [354 N.E.2d 553], Simon, J., dis. at p. 561.)

The existing workers' compensation statute is not (nor was it intended to be) a complete system of social insurance. Like all major laws, the present statute is the result of an accommodation of interests. There are several situations in which civil recovery against "third persons" ends up as a practical matter being recovered from the employer. The statute itself permits tort actions for willful and unprovoked physical acts of aggression and intoxication involving co-employees. (Lab. Code, § 3601, subd. (a).) Intentional torts have been treated as cumulative or at least alternative to workers' compensation. (*Magliulo* v. *Superior Court* (1975) 47 Cal.App.3d 760 [121 Cal.Rptr. 621].) ▮ Fraud by the employer does not restrict the employee to the workers' compensation remedy. (*Ramey* v. *General Petroleum Corp.* (1959) 173 Cal.App.2d 386 [343 P.2d 787].)

Not to allow a civil cause of action would permit the manufacturer to use the Workers' Compensation Act as a shield against the greater manufacturer liability. That greater liability exists independent of the common law defenses to tort actions by employees prevailing prior to the advent of the Workers' Compensation Act.

There is no reason why a manufacturer's liability should be any less to the injured person solely because he is an employee. Since a manufacturer must restore the full loss if his product injured a third person, his own employee should not be penalized by only partial restoration of his loss.

When an employer becomes a manufacturer for sale to the public, and assumes the risk of being a manufacturer, he has the opportunity to spread his costs for product liability and transfer it to the ultimate consumer. The fact that he himself as an employer may be one of those ultimate consumers is a factor he must consider in whether or not he becomes a manufacturer for sale to the public. The obligations of a

manufacturer exist even if the manufacturer had not employed workers such as plaintiff.

Limitations on the remedy of an injured employee should not be extended beyond the purposes of the workers' compensation law. Failure to apply the dual capacity doctrine to the manufacturer who sells to the public would unduly restrict the injured person's remedy. There is no reason to relieve a manufacturer who sells to the public of liability *as a manufacturer* by the chance circumstance that the defendant manufacturer also happens to be an employer of the injured person. The deterrent value of a manufacturer's liability to promote the manufacture of sale products is effectively reduced if recovery is limited to workers' compensation.

We limit the holding of this case to a defendant who engages in manufacturing for sale to the general public. ██ A single or occasional disconnected act does not constitute engaging in such manufacturing. The defendant who designs or manufactures a product for his own use and subsequently does sell an extra one of the products to his neighbor or to a similar business is not thereby subjected to manufacturers' liability when his own employee is injured in using the retained product. On the other hand, manufacturers' liability clearly arises where plaintiff employee is injured in using a product designed and manufactured by his employer primarily for sale to the general public and only incidentally used in the defendant's other activities. In between these extremes, the matter must be resolved on the facts of the particular case. The proper standard for determining whether a defendant is engaged in manufacturing so as to make applicable the manufacturers' liability imposed hereunder is the exercise of judgment on a case by case basis to decide if the manufacturing by the particular defendant is such as to justify the conclusion that it is part and parcel of an activity which occupies the effort, attention and time of the defendant for the purpose of possible profit on a continuing basis.

The workers' compensation system will not be crippled by the remedy herein. A finding of dual capacity does no more than adopt the reasoning of *Duprey*. No evidence has been presented that *Duprey* subjected the workers' compensation system to a wholesale erosion.

Respondent argues that the court's denial of appellant's petition for writ of mandate and/or prohibition is the law of the case and thus the present appeal may not be maintained. ██ The minute order issued

by this court simply denied the petition. Such a minute order is not a determination on the merits and res judicata should not be applied. (*People* v. *Medina* (1972) 6 Cal.3d 484, 492 [99 Cal.Rptr. 630, 492 P.2d 686].)

 The complaint sufficiently states a cause of action to withstand a general demurrer. For the purposes of a demurrer, all facts well pleaded in the complaint and those which reasonably arise by implication by such facts must be deemed true. It may reasonably be inferred from the allegations of the complaint that respondent is manufacturing the defective product for sale to the general public. (See *Bank of America* v. *Security Pacific National Bank* (1972) 23 Cal.App.3d 638, 641 [100 Cal.Rptr. 438].)

The judgments are reversed.

Gargano, Acting P. J., and Franson, J., concurred.