[Civ. No. 68644. Second Dist., Div. Seven. Mar. 28, 1984.]

LOUIS BIBBY et al., Plaintiffs and Appellants, v.
CENTRAL INDUSTRIAL ENGINEERING COMPANY, INC.,
Defendant and Respondent.

COUNSEL

Charles R. Weldon for Plaintiffs and Appellants.

Wells & Barber for Defendant and Respondent.

OPINION

SCHAUER, P. J.—The major issue to be decided in this case is whether plaintiffs have presented a triable issue of material fact based upon the dual capacity exception to the usual exclusivity of the workers' compensation remedy, when they have been unable to controvert evidence that the "product" involved in an industrial accident had not been completed at the time of the accident.

### SUMMARY OF FACTS AND PROCEEDINGS

Cecil Bibby (Bibby) was employed by Central Industrial Engineering Company, Inc. (Central) as a fitter, and his job entailed tack-welding pieces to steel beams. On April 26, 1980, Bibby had tack-welded a plate onto a beam, which was then hoisted to be moved across the shop for final welding and inspection. While the beam was being moved, either the plate affixed to it broke or it slipped out of its sling, causing it to fall on Bibby, crushing and killing him.

Plaintiffs, Bibby's parents, filed a suit for wrongful death against Central on March 26, 1981, seeking to recover on theories of strict products liability

and breach of warranty. After a relatively lengthy period of discovery (more than one year), Central sought an award of summary judgment, arguing that plaintiffs had not raised a triable issue of material fact, and as a result were limited in recovery to that which is provided under the workers' compensation laws. Central claimed that the steel beam was not a finished product when it fell on Bibby, and thus Central could not be characterized as a "manufacturer" of the beam when it killed Bibby. Plaintiffs asserted they had raised two triable issues of material fact: (1) whether the beam was a completed product at the time of Bibby's death so as to hold Central liable as a manufacturer under the dual capacity doctrine, and (2) whether a defect in the beam caused Bibby's death or his death was attributable to some other cause. Central was granted summary judgment, and plaintiffs appeal.

## STANDARDS FOR SUMMARY JUDGMENT

The summary judgment remedy, inasmuch as it denies the right of the adverse party to a trial, is drastic and should be used with caution. (*Eagle Oil & Ref. Co.* v. *Prentice* (1942) 19 Cal.2d 553, 556 [122 P.2d 264].) Summary judgment is properly granted only when the evidence in support of the moving party establishes that there is no material issue of fact to be tried. (Code Civ. Proc., § 437c; *Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 374 [182 Cal.Rptr. 629, 644 P.2d 822].) The court may not pass upon the issue itself. (*Slobojan* v. *Western Travelers Life Ins. Co.* (1969) 70 Cal.2d 432, 436 [74 Cal.Rptr. 895, 450 P.2d 271].) But when there exists no material issue of fact to be tried, and the parties' contentions turn upon an issue of law, summary judgment is proper. (*Burke Concrete Accessories, Inc.* v. *Superior Court* (1970) 8 Cal.App.3d 773 [87 Cal.Rptr. 619].)

"The moving party bears the burden of furnishing supporting documents that establish that the claims of the adverse party are entirely without merit on any legal theory." (*Lipson* v. *Superior Court, supra,* 31 Cal.3d at p. 374.) "The affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of summary judgment should be resolved against granting the motion." (*Slobojan* v. *Western Travelers Life Ins. Co., supra,* 70 Cal.2d at p. 437.)

## DISCUSSION

It is beyond dispute that in cases such as the one at bench where "an employee's injuries or death are compensable under the Workmen's Compensation Act, the right of the employee or his dependents, as the case may be, to recover such compensation is the exclusive remedy against the em-

ployer." (*De Cruz* v. *Reid* (1968) 69 Cal.2d 217, 221 [70 Cal.Rptr. 550, 444 P.2d 342].) This rule originates from California Labor Code section 3601 which provided at the time of Bibby's death, with several exceptions not applicable to the instant case, as follows: "(a) Where the conditions of compensation exist, the right to recover such compensation, pursuant to the provisions of this division is . . . the exclusive remedy for injury or death of an employee against the employer or against any other employee of the employer acting within the scope of his employment, . . ."

However, the landmark case of *Douglas* v. *E. & J. Gallo Winery* (1977) 69 Cal.App.3d 103 [137 Cal.Rptr. 797] permits an employee or in the case of his death, his dependents, to avoid the exclusive remedy principle of Labor Code section 3601 and recover from the employer for personal injuries or wrongful death in cases where "the product involved is manufactured by the employer for sale *to the public* . . . ." (*Id.*, at p. 107; italics in the original.) In its answers to interrogatories propounded by plaintiffs, Central responded that it did not distribute or sell steel beams to the public, but it did hold itself out as a steel fabricator, and it also answered that the beam causing Bibby's death was to be used for construction in a Prudential Insurance building. Thus, because a triable, but not in and of itself material, issue of fact may have been presented regarding this aspect of Central's business we will assume, without deciding, that it sold steel beams to the general public.

Notwithstanding the possibility that Central was in the business of selling steel beams to the general public, however, for appellants to prevail there must be a triable issue regarding whether the specific beam in issue was a manufactured product available for sale to the public. (*Id.*, at p. 107; *Nicewarner* v. *Kaiser Steel Corp.* (1983) 143 Cal.App.3d 31, 39-40 [191 Cal.Rptr. 522].) To invoke the dual capacity doctrine it must appear that "the defect in question exposed members of the general public to danger as opposed to employees only." (*Id.*, at p. 38.) Evidence of such exposure to risk would enable appellants to avoid summary judgment because it would satisfy the rationale underlying the dual capacity doctrine: "that if any injury arises from a relationship which is distinct from that of employer and employee and invokes a different set of obligations than the employer's duties to its employee, there is no justification for shielding the employer from liability at common law." (*Bell* v. *Industrial Vangas, Inc.* (1981) 30 Cal.3d 268, 276 [179 Cal.Rptr. 30, 637 Cal.Rptr. 266], quoting *D'Angona* v. *County of Los Angeles* (1980) 27 Cal.3d 661, 666-667 [166 Cal.Rptr. 177, 613 P.2d 238].)

Plaintiffs contend that the California Occupational Safety and Health (OSHA) report filed after the accident "indicates that the beam had been

'checked' and was in the stream of commerce when the plate tack welded to the beam broke causing the beam to fall on decedent." However, an examination of the OSHA report reveals that it mentions nothing about the steel beam either being for sale to the public or in the stream of commerce at the time of the accident. The report merely stated that "[a]fter finishing the fitting, they waited for the checker to check what they had done," and in no way implies the check was a final inspection or that the product itself was otherwise ready for sale to the public. To the contrary, the report also stated that the beam was yet to be transported to the welder's station, apparently for further work.

As Central correctly points out, appellants have adduced no evidence showing that beams with nothing more than tack-welding are sold to the public. However, Central has produced evidence that the steel beam here required further processing, through the declaration of Billy Allen, the shop foreman, who stated that the beam was being moved for additional welding, straightening and final inspection. Thus, appellants have failed to raise a triable issue regarding whether the steel beam was available for sale to the general public. To the contrary, all of the evidence shows that it was not finished and not available for sale at the time of the accident.

Appellants argue that "at the time of the tortious incident, decedent had stepped out of his role as a fitter and was utilizing the subject beam as would an ultimate user of the public to which such a structural product was ultimately sold . . . . Decedent's activities in this regard were like that of an outside construction worker who in all likelihood would come in contact with the beam while installing the same on a construction site." This argument fails to grasp the significance of the dual capacity doctrine's "for sale to the public" requirement. A worker on a construction site would come in contact with the beam after processing of it was completed and it had been sold since it would be used in the construction of a building. As Central asserts, there is no evidence that beams with tack-welding only are used on a construction site. Furthermore, Central has made an uncontroverted showing that the beam at issue was being moved for further processing before it was ready for sale (or, as in this case, for use in construction of a building). Because the steel beam required further welding, straightening and inspection, we hold that Bibby did not use the beam "as would an ultimate user of the public." His risk involving an unfinished beam obviously was not the same as that to which the public would be exposed in the case of a completed product.

Apart from their arguments discussed above, appellants assert that the correct focus in dual capacity cases is simply the status of the employer as

a manufacturer as discussed in *Douglas* v. *E. & J. Gallo Winery, supra,* 69 Cal.App.3d at p. 113. Appellants are accurate in their apparent belief that Central must be a manufacturer within the *Gallo* standard if it is to be held liable here in products liability. And Central does not dispute that it was engaged in manufacturing. However, this status alone is insufficient to withstand a summary judgment motion because, as we have explained, Central has shown that the beam at issue was to undergo further processing at the time of the accident and hence it was not then a completed product of the manufacturing. Thus, regardless of Central's general status as a manufacturer of steel beams, the focus must be upon the specific beam involved and, therefore, appellant's purported first "triable issue" fails.

The second "triable issue" asserted by appellants fails for the same reason. Plaintiffs claim that if their version of Bibby's death were accepted—that death was caused by the breaking of a plate tack-welded to the beam—" they could proceed to trial on the theories of strict products liability and breach of warranty under the dual capacity doctrine as stated in *Douglas* v. *E. & J. Gallo Winery, Inc., supra,* and more recently in *Nicewarner* v. *Kaiser Steel Corp.*" This contention ignores the "for sale to the public" requirement of *Gallo* and *Nicewarner.* Absent any evidence controverting Central's proof that at the time of the accident the steel beam was not available for sale to the public or for use on the construction site, it is immaterial whether Bibby's death was caused by the breaking of a plate tack or (as Central suggests) by the beam slipping out of a chain. Under *Gallo* and *Nicewarner,* thus, the dual capacity doctrine is not applicable and the instant suit violates the principles of exclusivity of the workers' compensation remedy. Hence, there are no triable issues in this civil action.

For the foregoing reasons, we affirm the summary judgment.

Thompson, J., and Johnson, J., concurred.